[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 148 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 149 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 150 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 151 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 153 
The mortgages executed by John C. Smith and William B. Rubert appear to have been regarded by the learned referee as transferring an undivided four-fifths of the corpus of the partnership property therein described. He has found, as to the mortgage from Smith, that it was executed and delivered with the assent of the other members of the firm. This mortgage, if such be its true construction, having been given to secure the individual debt of the partner, even if effectual as to the firm, by reason of the concurrence of all the partners giving it, would be a fraudulent misapplication of the partnership property, and void, as to the creditors of the firm, under the principle of the cases of Ransom v. Van Deventer (41 Barb., 307), and Wilson
v. Robertson (21 N.Y., 587), unless the firm were solvent at the time the mortgage was given, and sufficient property would remain, over and above that devoted by that instrument to the payment of the individual debt, to pay the debts of the firm. The Supreme Court have considered that the findings of the referee fail to disclose any insolvency, but, on the contrary, establish the solvency of the firm at the time the mortgages were given. We cannot concur in this view of the effect of the findings, but think that the facts found show that the firm was insolvent when the mortgages were given, and if there were any doubt upon that point, they clearly establish that the diversion of four-fifths of its properties to the individual debts of two of the partners would make it insolvent.
According to these findings, the firm was, in February, 1867, and had been from December, 1866, largely indebted and *Page 154 
embarrassed, and the value of its property, and its consequent ability to pay its debts, depended, in part, upon the continuance and proper management of its business. The mortgages were given on the 2d and 28th of February, 1867. If they were intended to be liens upon the corpus of the property, as they have been treated by the referee, and not merely liens upon the surplus which should belong to the partners respectively after payment of the firm debts, it is evident, from the facts stated as existing at the time, as well as from the result, that their enforcement would prevent the firm creditors from collecting their demands out of the firm property, and that, under the principle of the cases cited, they were fraudulent and void as to such creditors. If so, the mortgagees, by purchasing at the sale under the mortgages, acquired no valid title as against such creditors, and the plaintiff was consequently not entitled to recover.
Assuming, however, that the mortgages were intended to pass merely the individual interests of the mortgaging partners in the common stock, and for that reason were not fraudulent as to the firm creditors, then it becomes necessary to consider their legal effect upon the rights of creditors of the firm. It is clear that the remaining partner was entitled to the control of the firm property so long as he retained his interest, and to apply it to the firm debts, and that the mortgagees acquired only a right to the surplus, if any, which would be found to belong to the mortgagors on the settlement of the accounts.
And so long as any of the partners had this dominion over the firm property, it can hardly be questioned that it was subject to levy on execution at the suit of a firm creditor. (Lovejoy v.Bowers, 11 N.H., 404; Coover's Appeal, 29 Penn. St. R., 9;Pierce v. Jackson, 6 Mass., 243.)
But the point upon which the judgment was sustained in the Supreme Court, at General Term, was, that after the execution of the mortgages H.E. Goodwin, the only remaining *Page 155 
partner, made a separate transfer, to a third party, of his individual interest in the partnership properties, and, on this ground, it was held that when the execution was levied none of the defendants in the execution had any leviable interest in the property levied upon; and it was further held that the plaintiff, who had purchased the interest of S.E. Rubert, under his mortgage, was entitled, by virtue of the two mortgages and of the purchase at the sale under them, to recover the value of four-fifths of the corpus of the partnership property levied upon by the defendants, without regard to the partnership debts.
This position is not without authority in its support. It is founded upon the theory that the separate transfers of the individual interests of all the partners divested the title of the firm; that firm creditors have no lien upon the partnership effects and no direct right to compel their application to firm debts in preference to individual debts. That the right to compel this application is an equity vested in the partners themselves, and exists only as between each other. That so long as this equity exists in any of the partners, the creditors have an equity to compel its enforcement between the partners, and may, by this means, obtain the application of the partnership properties to their demands, in preference to the individual debts or separate dispositions of any of the partners; in other words, "that the equities of the creditors can only be worked out through the equities of the partners." From these premises, the conclusions have been drawn that if such equities are waived or released by the partners themselves the creditors lose them, and that a transfer of the individual interest of a partner in the firm property to a third person extinguishes the equity of the partner, and consequently that of the creditors, which is dependent upon it. This doctrine has been carried to the extent of holding that if the individual interests of each of the members of a firm are successively sold under executions against such members respectively for their individual debts, the purchasers acquire the corpus of the property, free from the copartnership debts, *Page 156 
and the equities of the partners and partnership creditors are extinguished. (Coover's Appeal, 29 Penn. St. R., p. 9.)
The injustice and it may be said, the absurdities, which result from such a view, lead to an inquiry into its correctness. A firm may be perfectly solvent though the members are individually insolvent, yet in such a case the doctrine that the property of the firm is divested, and the equities of the partners and partnership creditors are extinguished, by separate transfers of the individual interests of all the partners, might result not only in an appropriation of all the properties of the firm to the payment of the individual debts, to the entire exclusion of the firm creditors, but to a most unjustifiable sacrifice and waste of such properties. For instance, suppose a firm to consist of three members, each having an equal interest, and to be possessed of assets to the amount of $300,000, and to owe debts to half of that amount, the interest of each partner, supposing their accounts between themselves to be even, is $50,000. The members of the firm are individually indebted. One of them sells his share, and receives for it $50,000, which is its actual value; the share of another of the partners is sold out under execution, and brings its full value, $50,000. Thus far one partner remains, and he has an equity to have the firm debts paid, and those who have sold out are protected against those debts. The purchasers of the separate interests are entitled to the surplus only; the joint creditors still have their recourse against the partnership property and the right to levy on such of it as is subject to sale on execution; but before any levy, the remaining partner sells out his individual interest, or it is sold out on execution. According to the doctrine applied in the present case, and maintained in the case of Coover's Appeal (supra), the firm property is, by this last sale, relieved from the partnership debts, the two shares first sold are at once changed from interests in the surplus to shares in the corpus of the property free from the debts, their value is doubled, and the fund which should have gone to pay the *Page 157 
joint debts is, without any consideration, appropriated by the transferrees of the individual interests of the partners.
Such is, in substance, the operation performed in the present case. Assuming that the mortgages are intended to convey only the separate interests of the mortgagors (which, as has been shown, is the only theory upon which they can escape being regarded as fraudulent), the mortgaged property was, at the time the mortgages were given, liable to be taken for the partnership debts. The mortgages were but a slender security, and their value dependent upon the firm debts being paid. This state of affairs continued so long as Hollister E. Goodwin retained his one-fifth interest in the firm. The firm property was legally under his dominion for the payment of firm debts, and the firm creditors, if they then had their execution, could have rightfully levied upon it, or availed themselves of Goodwin's equity as to any property which must be reached in that form. But on the tenth of May, 1867, Hollister E. Goodwin made a transfer of his interest in the property of the firm to one Mary B. Goodwin, and on the same day the plaintiff and Samuel E. Rubert took possession under their mortgages. The referee has not found what was the consideration or purpose of this assignment from Hollister E. to Mary B. Goodwin, nor has he expressly found that it was made in good faith. But the effect claimed for it is that Hollister E. Goodwin being the only remaining partner, the transfer of his interest divested him of his dominion over the partnership property, and of his equity to require the application of the partnership property to the payment of its debts, and that as the partnership creditors could only reach the property through him, he, by this transfer or surrender of his rights, had cut off their access to it, and thrown it into the hands of the transferrees of the individual partners, unincumbered by firm debts.
Waiving any question as to the bona fides of this transaction, the referee not having found it fraudulent, and treating the sale of Goodwin's interest as if it had been made under an execution against him, we come back to the question *Page 158 
whether the consequences claimed do legally follow from separate sales of the individual interests of the several partners.
It would be a superfluous labor to trace the history of the changes which have, from time to time, taken place in the views of the courts respecting the nature of the interests of individual partners in the common stock of a firm, and the respective rights of separate and joint creditors; but it is sufficient to observe that they have resulted in a general recognition of the doctrine, that as between a firm and its creditors the property is vested in the firm, and that no individual partner has an exclusive right to any part of the joint stock until the firm debts are paid and a balance of account is struck between him and his copartners, and the amount of his interest accurately ascertained.
The corpus of the effects is joint property, and neither partner separately has anything in that corpus; but the interest of each is only his share of what remains after the partnership debts are paid and accounts are taken. (West v.Skip, 1 Ves., 239; Fox v. Hanbury, Cowp., 445; Taylor v.Fields, 4 Ves., 396; 15 Ves., 559, note; Pierce v. Jackson,6 Mass., 243; Doner v. Stauffer, 1 Penn. R. [Penrose Watts, see p. 164], 198; 2 K. Com., 11th ed., p. 78, note; Collyer on Part., 3d Am. ed. [Perkins], notes to § 822, pp. 704 to 710; Story on Part., notes to §§ 261, 262, 263; Crane v. French, 1 Wend., 311; Witter v. Richards, 10 Conn., 37.)
Partnership effects cannot be taken by attachment or sold on execution to satisfy a creditor of one of the partners, except to the extent of the interest of such separate partner in the effects, subject to the payment of the firm debts and settlement of all accounts. (3 Kent Com., 76, 11th ed.)
Purchasers of the share of an individual partner can only take his interest. That interest, and not a share of the partnership effects, is sold, and it consists merely of the share of the surplus which shall remain after the payment of the debts and settlement of the accounts of the firm. (3 K.C., 78, note b, 11th ed.)
No more property can be carried out of the firm by the *Page 159 
assignee of one partner than the partner himself could extract after all the accounts are taken. (1 Ves., 241, Am. ed., note; 15 Ves., 557.)
No person deriving under a partner can be in a better condition than the partner himself. (Fox v. Hanbury, Cowp., 445.)
A partner has no right, by an assignment of his interest, to take from the creditors or other partners the right to have their claims against the partnership satisfied out of its property. A mortgage made by one partner, of his undivided interest, cannot avail against the creditors of the partnership who attach the partnership property. (Lovejoy v. Bowers, 11 New Hamp., 404.)
These principles have been enunciated in a great number of cases where some one at least of the partners retained his equity to have the firm debts paid, and the rights of the creditors to assets or proceeds, which have come under the control of a court of equity, have been worked out through the equity of that partner. But I find no case in which the consequences of transfers of the separate interests of all the partners to outside parties has been considered, except the case of Doner
v. Stauffer (1 Penn. [Penrose Watts], 198), and Coover'sAppeal (29 Penn. St. R., 9), before referred to. In neither of these cases is the point adjudicated, for in both cases the joint creditors intervened before the sale of the interest of the last remaining partner, and their right to priority was sustained; though the opinion of the court was expressed as to what the result would have been if all the individual interests had been first sold.
There is another class of cases in which the partnership effects have been held to be liberated from liability to be applied to partnership debts in preference to the separate debts of one partner; that is where a bona fide sale has been made by a retiring partner, in a solvent firm of two members, to his copartner, the latter assuming the debts. In such a case it is settled that the property formerly of the partnership becomes the separate property of the purchasing partner, *Page 160 
and that the partnership creditors are not entitled to any preference as against his individual creditors in case of his subsequent insolvency. (Ex parte Ruffin, 6 Ves., 119; Dimon
v. Hazard, 32 N.Y., 65.) But in those cases the joint property was converted into separate property by the joint act of all the members of the firm. They had power to dispose of the corpus of the joint property, and the exercise of that power, when free from fraud, divested the title of the firm as effectually as if they had united in a sale to a stranger. It remained subject to execution for firm debts so long as it continued in the hands of the purchasing partner. It is conceded that the creditors have no lien which would affect the title of a purchaser from the firm. But the question now is, what is the effect upon the title of the firm, as between it and its creditors, of transfers by the partners severally of their respective interests to third persons? Where the property remains in specie, and no act has been done by the firm to divest its title, but the partners have made separate transfers of their respective individual interests to different persons, is it still to be regarded, as to firm creditors, as firm property, or has it become the absolute property of the several transferrees of the interests of the individual partners?
It has been shown that no share in the corpus of the property passed by either of these transfers separately, but merely an interest in the surplus, and which should be ascertained on an accounting after payment of the firm debts. But it is claimed that, when all the partners have assigned, their interest in the property is divested, and their equity is destroyed, and, therefore, the property is released from the debts, and what was, at the time of the assignment, a share of a contingent surplus, has been converted into a share of the corpus of the property. Is this position sound? When a partner sells his interest in a firm to a person other than his copartner, or it is sold on execution against him, does he thereby lose all equity to have the firm debts paid out of the assets?
When he sells to his copartner he relies upon his assumption *Page 161 
of the partnership debts, and unless he stipulates for an application of the assets to that purpose, he parts with all lien upon them. But when he sells to a stranger not liable for the debts, or his interest is sold on execution, is not the right to have the debts paid out of the property a right of indemnity personal to himself, and which does not pass by the sale? Could it be tolerated that the interest of a partner should be sold under execution against him, on which sale only the value of his interest in the surplus could be realized, and that the purchaser should be allowed to take the corpus of the property and leave him liable for the debts? If the legal effect of the transfer were set forth in the instrument, it would be seen that all the purchaser acquired was a right to an account, and to the partner's share in the surplus, after payment of the debts when ascertained, and that he had no right to that part of the property which was required for the payment of debts; that the sale was subject to the debts. (3 K. Com., 76-78.) The partner whose share was sold would manifestly have an interest in the protection and appropriation of that part of the property in discharge of his own liability to the firm creditors.
I do not see how this right can be affected by the question whether the separate interests of all or only one of the partners is thus sold. Each of the purchasers would acquire an interest merely in the surplus, and each partner whose interest was sold would have the right to indemnity against the firm debts by the application to such debts of so much of the property as might be necessary for the purpose. These debts must have been taken into consideration in fixing the price of the interest sold, and consequently allowed to the purchaser, and the partnership assets are the primary fund for their payment. The case differs materially from a sale by a retiring copartner to his copartner, who is personally liable for the debts directly to the creditors; but even such a sale is valid only when there is no insolvency at the time. To sell to an insolvent partner would be a clear fraud. How much more clearly apparent would be the injury to creditors *Page 162 
by a sale to a person not liable for the debts, if such sale had the effect to relieve the property from them.
It can hardly be necessary, where the firm property remains in specie and is tangible and capable of being levied upon, to resort to the equities of the partners in case there has been no transfer by the firm, and the only adverse claimants are assignees of the individual interests of the several partners for their separate debts. The right of the firm creditor to levy on property thus situated can be sustained on two grounds. If the effect of any of these transfers is to divest the title of the firm, then, if effected by the acts of the partner, they are clearly fraudulent and void as to firm creditors, as is shown in the cases of Ransom v. Van Deventer (41 Barb., 307) andWilson v. Robertson (21 N.Y., 587.) An appropriation to the individual debt of one partner of any part of the firm property, even with the assent of his copartners, is illegal and void, provided the firm is not left with sufficient to pay its debts. How absurd it would be to hold that all of the partners, by making separate assignments of their respective shares in the firm property to their individual creditors, could effectually divest the firm of all its property and apply it to their individual debts, leaving nothing for the partnership creditors. But the simple solution of the question is to hold that the title of the firm, as between it and its creditors, to the corpus of the property, or at least to so much of it as is necessary for the debts, is not divested by these separate transfers to strangers.
As is stated by Prof. Parsons, in his work on Partnership (chap. 10, § 1, pages 356 to 362, 2d ed.), a partnership, though neither a tenancy in common nor a corporation, has some of the attributes of both. The well established rule which excludes creditors of the several partners from the partnership property until that has paid the debts of the partnership, is derived from the acknowledgment that a partnership is a body by itself. In its relation to its creditors it is placed upon the basis of having its own creditors and possessing its own property, which it applies to the payment of its debts, and after *Page 163 
this work is done, there is a resolution of the body into its elements.
Until some act is done by the firm to transfer the joint interest, no separate act of either or all of the partners, or proceedings against them individually with reference to their individual interests, should be held to affect the title of the firm so as to preclude a creditor of the firm, having a judgment and execution, from levying upon the joint property. To hold that separate transfers of their individual shares by the several partners can convey a good title to the whole property free from the joint debts, would be to return to the doctrine, long since exploded, that partners hold by moieties as tenants in common. In the present advanced stage of the law upon this subject, no established rule is violated by holding that the title of the firm, as between it and its creditors, cannot be divested by the acts of the partners severally, not in the business of the firm, nor by the separate creditors of members of the firm (further than such temporary interruption of the possession as may be necessary to enable the officers of the law to make an effectual sale of the interest of the debtor partner). This view does not recognize any lien of partnership creditors upon the firm property. The firm have power to dispose of it without regard to the creditors, provided the disposition be not fraudulent. But the individual members or their creditors ought not to have any such power, and all transfers made by them for individual purposes should be held inoperative upon the corpus of the property, so long as there are firm debts unpaid for which the property is required. As against firm creditors, no greater effect should be given to such transfers when made by all the partners separately, than when made by a portion of them, but the property should be deemed to continue in the firm until its title has been divested by some act of the firm.
My conclusion is that, as between the firm of J.C. Smith Co. and its creditors, the property levied upon by the defendants remained the property of the firm, and subject to levy on execution against it, notwithstanding the transfers *Page 164 
by the several partners of their respective individual interests.
I have not adverted to the changes which took place in the firm by the retirement of John Wride and M. Huntington, and the transfer by them of their interests to J.C. Smith, intermediate the contracting of the debt to the Bank of Geneva and the levy, the effect of these changes being fully considered in the opinion of my learned associate, ALLEN, J.
The judgment should be reversed, and a new trial ordered, with costs to abide the event