## Case No. 9,300.

MATTOCKS v. ROGERS et al.

[1 Hask. 547.] [1]

District Court, D. Maine. Dec., 1874.

CONTRACTS — IN WRITING — CONSTRUCTION — CO-PARTNERSHIP—LIABILITY TO CREDITORS—FRAUD —BANKRUPTCY—ACTION BY ASSIGNEE.

1. A writing should be construed so that all its provisions may have force and effect if possible, and the intent of the parties prevail.

---

[1] [Reprinted by permission.]

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

2. A copartnership is not established by a writing, stipulating that the first party shall furnish $3,000 and his services to the other to be used in his business for one year at a stipulated price, when the first party may elect to become a permanent and equal partner by increasing the sum furnished to $5,000 or to withdraw the same, and that the sum so furnished meantime shall not be chargeable with losses, notwithstanding, a provision in the writing that the first party "becomes a partner in said business from this date under the above conditions" and under a specified firm name.

3. Such first party, who transacts business under such firm name, and who holds himself out to the public as a copartner in the business, is liable to creditors as a copartner, and in case of insolvency of both partners, the sum so contributed by him to the business is partnership assets.

4. It is a fraud upon partnership creditors, for such first party, after both parties have become insolvent, to release to his associate all interest in the assets of the business, and receive therefor from him his notes for the $3,000 originally contributed to the business, payable to a third person, who, acquainted with all the facts had loaned the same to such first party to invest in the business, a part of such notes being endorsed by a fourth person, secured therefor by a mortgage upon the copartnership assets.

5. The assignee in bankruptcy of such copartnership may in equity invalidate such transactions as fraudulent and void.

In equity. Bill by [Charles P. Mattocks] an assignee in bankruptcy to annul a fraudulent transfer by the bankrupts [John T. Rogers, Jr., Frances E. Rogers, Dwight T. Golder, and Edward T. Elden] of their copartnership assets for the benefit of an individual creditor of one of the copartners. The answer denied any copartnership between the bankrupts, and averred that the bankrupt, Rogers, Jr., having borrowed $3,000 from his mother, Frances E. Rogers, loaned the same to Golder, who in consideration of a release from Rogers, Jr., gave his notes to the mother for the same, and a mortgage upon his business assets to Elden to secure him for endorsing a part of the notes; that the transaction was without fraud, bona fide, and valid. Replication being made the cause was heard on bill, answer and proof.

Charles P. Mattocks, pro se, and Edward W. Fox, with him.

William L. Putnam, for Frances E. Rogers.

Fabius M. Ray, for J. T. Rogers, Jr.

John Rand, for E. T. Elden.

FOX, District Judge. The plaintiff as assignee of D. C. Golder & Co., as well as of the individual members of the firm, has brought this bill to set aside a transfer made by John T. Rogers, Jr., one of said firm, on the 29th day of January last, of his interest in the copartnership effects, to his said copartner D. C. Golder, and also to obtain a surrender and cancellation of the notes given by said Golder to Frances E. Rogers, the mother of said John T., as a consideration for the said transfer, for the sum of three thousand dollars, two of which notes, each being for one thousand dollars, were endorsed by E. T. Elden.

It appears that on the 24th day of Sept., 1873, said John T. Rogers, Jr., and D. C. Golder entered into a written agreement by which said Rogers was to advance to said Golder three thousand dollars to be employed by said Golder in his business as a manufacturer of ladies' garments, and he was also to contribute for the common benefit all his time, &c., to the best of his ability in the business; for the capital and services so contributed he was to receive from said Golder, the sum of eleven hundred dollars per year. The agreement further stipulated, that the capital so furnished by said Rogers should not in any degree be held responsible or liable for any losses in the business during the year ensuing, at the termination of which time said Rogers was to receive the capital contributed by him, or he could as he should then elect become a permanent and equal partner by increasing his capital to five thousand dollars. The agreement then concludes as follows: "The said John T. Rogers, Jr., becomes a partner with the said Dwight C. Golder in said business from this date, under the above conditions, the firm name to be Dwight C. Golder & Co."

Rogers borrowed from his mother, Frances E. Rogers, the full amount of three thousand dollars, which was by him paid into the concern, and he continued to give his time and services, as required, to the business until the 29th day of January. His name appeared on the business card of Dwight C. Golder & Co. as one of the firm comprised of Golder and Rogers; all the business was transacted in the firm name, and it was well understood in the community, that he held himself forth to the public as a member of and jointly interested in the business of the firm of Dwight C. Golder & Co. No account of stock was taken at the time of the formation of this copartnership, and I am well satisfied, that Rogers from his entire ignorance of this particular branch, as well as his lack of experience generally in business matters, was very much deceived by the misrepresentation of Golder as to his condition and standing in Sept., 1873. Large debts, to a very considerable amount, were subsequently contracted in the name of Dwight C. Golder & Co. in the course of their business, which now remain unpaid, and the only means from which the same can be in any part satisfied is from the proceeds of sale of the stock formerly belonging to Dwight C. Golder & Co., and there is not sufficient to discharge the full amount.

From the admissions of both Golder and Rogers, it is shown that in Jan., '74, the firm was deeply insolvent; that both Golder and Rogers were well aware of their condition, and that Rogers was desirous of withdrawing with his advance of $3,000 from the business. To effect this there was a final dissolution, on the 29th day of January, of the

firm of Dwight C. Golder & Co., and Rogers, by an instrument under seal, conveyed to Golder in consideration of the three thousand dollars, all his right, title and interest, as a member of the firm, in and to all the stock and fixtures of Dwight C. Golder & Co., together with all his interest in the rights, credits and book accounts of said Dwight C. Golder & Co., with authority to use the name of said Rogers in collecting the same. It does not appear, that any agreement or understanding was had between Rogers, Jr., and Golder, as to the debts due from Dwight C. Golder & Co.; they were not assumed by Golder, nor did he in any way agree to relieve or indemnify Rogers from his liability on account thereof.

Mrs. Rogers was desirous of receiving the amount she had loaned her son, and in these negotiations was represented by her husband John T. Rogers, who is shown by the evidence to have been fully cognizant of the pecuniary condition of Dwight C. Golder & Co., and that they were then insolvent; and Mrs. Rogers is, of course, to be held chargeable with all the knowledge or information derived in this respect by her agent, whilst in the conduct of her business. John T Rogers therefore would not accept the individual security of Dwight C. Golder, in payment for the three thousand dollars, but insisted on further security; and it was eventually agreed between Golder and himself, he acting in his wife's behalf, that Golder should make three notes of one thousand dollars each, payable in two, four, and six months to Mrs. Rogers, and that the last two should be endorsed by Edward T. Elden, Golder's father-in-law. Elden agreed to endorse these notes, on condition that he was secured therefor by a mortgage from Golder on the stock. These notes were made and endorsed as agreed, and the mortgage was given by Golder to Elden, which not only secured these endorsements, but also other liabilities of Golder to Elden for a very considerable amount. These latter claims have all since been proved as unsecured claims against Golder's estate in bankruptcy by Elden, and Elden has relinquished all claims under his mortgage in respect to them, but he insists that his mortgage is a valid subsisting security for his endorsement of the two notes held by Mrs. Rogers, if he is held liable as endorser. The petition in bankruptcy was filed by the firm creditors against D. C. Golder & Co., Feb. 18, 1874.

It is contended, in behalf of Mrs. Rogers, that J. T. Rogers, Jr., did not become a copartner with Golder by their agreement of Sept. 24, notwithstanding the statement contained therein at its close, "that said John T. Rogers, Jr., becomes a partner with said Dwight C. Golder in said business from this date, under above conditions, the firm name to be Dwight C. Golder & Co.;" that the whole instrument is to be examined, and its legal effect to be gathered from all contained therein, rather than from any single clause, and that it is clearly manifest, that although the parties might have supposed a copartnership, inter sese, was thereby created, that in law such was not the legal result of the entire instrument, as Rogers was not to have any right or interest in the property, but was only to loan the concern the three thousand dollars for one year, on which and for his services during that time, he was to receive a fixed compensation of eleven hundred dollars, in no way dependent on the profits or loss of the business; that he could not demand any account from his associate; had no right to claim that accounts ever should be kept of the transactions, and that it was expressly stipulated, that the capital contributed by Rogers shall not in any degree be held liable or responsible for any losses in the business of said Dwight C. Golder & Co.

Upon this branch of the case, the court is of the opinion that the construction given to this instrument by the counsel for Mrs. Rogers is the true one, and that the latter clause in the agreement, that Rogers is to become a partner with Golder, must be taken in connection with the stipulation that it is to be "under the above conditions," which as a whole are not sufficient to constitute a general partnership, as between the parties to such agreement. As between themselves, Golder became the debtor of Rogers for the amount thus advanced, and the same was not at the risk of the business. Rogers acquired, as against Golder, no legal interest in the effects of Dwight C. Golder & Co., but the legal title thereto was in Golder alone. It is therefore claimed quite strenuously, that by the dissolution in January and the bill of sale from Rogers to Golder the latter acquired nothing; that no interest in the estate of D. C. Golder & Co. whatever, passed thereby to Golder, as the whole was already vested in him, and that all that was really then accomplished was the repayment of the loan of three thousand dollars by Golder, for which he was indebted to Rogers, the same being made to Mrs. Rogers, by the authority of her son in satisfaction of the amount for which he was then indebted to her.

As between Rogers, Jr., and Golder, it may well be conceded that such was the effect of the arrangement; but there were others who were alike interested in the property of Dwight C. Golder & Co., who were no parties to these proceedings, and whose rights should not be compromised thereby; and these were the creditors of Dwight C. Golder & Co., who are now represented by the complainant. While no partnership inter sese existed between Rogers and Golder, yet to all intents and purposes, so far as the creditors of Dwight C. Golder & Co. were interested, Rogers and Golder were copartners. They were jointly liable as copartners for all the debts of Dwight C. Golder & Co., and the property held and acquired in the name of the firm was copartnership property, which

the creditors had a right under the provisions of the bankrupt act to claim should be first appropriated to the discharge of the firm liabilities. For these reasons the court holds that both Rogers and Golder are estopped as against the firm creditors, to claim that the property which had been acquired in the firm name was in truth the property of Golder alone, and that by a secret agreement between them, he, Rogers, had no interest therein. It is not claimed that firm creditors were cognizant of any such agreement; on the contrary, all their dealings were with the firm of Dwight C. Golder & Co.; they sold to that firm, gave credit to the firm on the faith of the firm obtaining the title to the purchases made. Rogers in every way possible held himself out as liable for the firm debts, and that the firm obtained the entire title to the property purchased in the firm name. At the time of the dissolution, he again sanctioned this view of his relation, by advertising to the world at large his withdrawal from the firm, and his transfer of all interest in its estate to his copartner; and having so conducted himself from the inception of his connection with the business, a court of equity is bound in respect to all who have dealt with him, trusting to that relation as the true one, not to allow him to insist on something entirely different, and thereby derive a benefit to himself and his individual creditors, in fraud of his copartnership creditors.

The rights of the partnership creditors must be considered the same, as if the copartnership in the present case had been of the ordinary, usual character, and are not to be affected by the secret agreement between its individual members. Under what circumstances can one member of a firm, convey to his copartner the partnership effects, so that the transfer will be valid and effectual against the firm creditors and the assignee in bankruptcy of the copartnership?

In Wilson v. Robertson, 21 N. Y. 592, it is said: "It will be conceded, that the creditors of a firm are legally and equitably first entitled to the partnership effects. Such creditors have a claim upon the joint effects, prior to every other person, which the court will enforce and protect alike against the individual partners and their creditors. * * * An appropriation of the firm property, to pay the individual debts of one of the partners is, in effect, a gift from the firm to the partner, a reservation for the benefit of such partner or his creditors to the direct injury of the firm creditors. Can it reasonably be doubted, that when an insolvent firm assign their effects for the payment of the private debts of a member, for which neither the firm, nor the other members, nor the firm assets, nor the interests of the other members therein, are liable, such an assignment and appropriation are a direct fraud upon the joint creditors of the assignors?"

In Ransom v. Van Deventer, 41 Barb. 307, it was decided: "That a division by partners of the copartnership assets between themselves, and the transfer of such assets by the individual partners in payment of their private debts when the partnership is insolvent, is in point of law a fraud upon the creditors of the partnership. Such a transfer of the partnership effects is invalid, as against the creditors of the firm, and the property remains partnership property, until it comes to the hands of a bona fide purchaser for a valuable and new consideration. If the person to whom the property is transferred, has notice that it is partnership property, and he takes it in payment of a precedent debt, he will not be deemed a bona fide purchaser."

In that case, in a creditor's bill by plaintiffs as judgment creditors of a firm, they were allowed to reach the proceeds of a note given to the firm, and endorsed over to a creditor of one member of the firm by the consent of the other members, the firm being insolvent; but the party to whom the note was endorsed was entirely ignorant of such insolvency. The learned judge, in giving the opinion of the court says: "What is a partnership but a single person in law, having as such, debts and credits and rights as a single person? The assignment, or transfer without assignment, of the property of an insolvent partnership, is precisely the same violation of the rights of creditors that it would be if it were in fact a single person, and the gift to one of the partners, or to his creditors, or for his benefit, does not vary or affect the principle. It is the giving away in either case, of the property of an insolvent debtor, at the expense of, and in fraud of his creditors."

In a late case before the New York court of appeals (Menagh v. Whitwell, 52 N. Y. 146) it was decided, that "a transfer by one partner of an interest in, or a lien given by him upon the corpus of the partnership property to pay an individual debt, although made with the consent of the other partners, is fraudulent and void as to the creditors of the firm, unless the firm was at the time solvent, and sufficient property remained to pay the partnership debts."

The insolvency in the present case is clearly established, and there would be sufficient property remaining to pay out a small dividend upon the company liabilities, if this amount of $3,000 is first paid therefrom; and it is also clearly shown, that both of the partners, as well as the agent of Mrs. Rogers, at the time well knew of this insolvency, and this scheme was adopted for the payment of Mrs. Rogers by Golder from the property which formerly belonged to Dwight C. Golder & Co., Rogers still remaining liable for all the firm debts.

In Re Cook [Case No. 3,150], the court says: "A sale by one partner to his copartner, when the firm is insolvent and upon the eve of bankruptcy, which if upheld, would operate to apply the property of the retiring partner

to the payment of the individual debts of the partner purchasing, is presumptively ·fraudulent as to the firm creditors, and the courts should set aside such sale, and distribute the property as firm property to the payment of the firm debts."

If the legal effect of such transfer would be to change the order of payment and prefer certain creditors, the private creditors over the firm creditors, it would be void as creating a preference, contrary to the provisions of section 35 of the bankrupt act.

It is claimed further in behalf of Mrs. Rogers, that if the court should hold that the property of Dwight C. Golder & Co., notwithstanding the transfer by Rogers to Golder, still remained company property liable for the payment of firm liabilities, that the remedy of the plaintiff is to be sought in the marshalling of the assets and postponing the payment of Golder's individual liabilities, until the partnership liabilities are fully paid, and that Mrs. Rogers should be allowed to retain her claim against Golder, as promissor of the notes, in case he does not obtain his discharge in bankruptcy, and should also be permitted to collect of Elden the two notes which he endorsed. By this course being adopted, it is said the rights of the creditors will be fully protected, and Mrs. Rogers will not be deprived of any rights to which she is entitled.

Courts of equity are not in the habit of allowing parties engaged in a fraudulent proceeding, to dictate as to the course to be adopted by those whose rights are affected by such proceedings; it is not for one thus situated to ask the court to require the other party to select that method of redress, by which the guilty party will derive more or less advantage from his fraud; on the contrary, it is rather the duty of the court, and of all parties interested, to sanction that method of redress, which will be most likely to prevent further attempts of a similar character, and to compel parties to abstain from all schemes in violation of law. A court of equity will not lend its aid, so as to require a party to adopt that course which shall render the fraudulent conduct of a party as profitable and advantageous as possible to him.

These proceedings of Jan. 29 were, according to the authorities before cited, fraudulent and void as to the firm creditors; and the assignee of the firm, by this bill, asks that they may be so decreed and set aside, and that the property may come to his hands unincumbered thereby, and without any cloud upon the title as individual property of Golder, but on the contrary as being the estate of Dwight C. Golder & Co.

In cases of this description, the courts in bankruptcy have frequently adjudged such transfer by a partner to his copartner as void, and that the property still remained firm property; and when property has been thus fraudulently conveyed, an assignee may re-

sort to a court of equity, to recover the same for the benefit ·of the estate. As said by Curtis, J., in Carr v. Hilton [Case No. 2,436]: "A fraudulent conveyance is no effectual conveyance as against the interests intended to be defrauded. * * * The case of the assignee is, therefore, that the lands in question are the property of the debtor, and that he prays the aid of this court to remove an apparent cloud upon his title, which though void, interferes with the discharge of his official duty." It would be difficult to find language more applicable to the present case. Here copartnership estate has come to the hands of the assignee as belonging solely to the firm, with a cloud upon it by reason of the proceedings which are here sought to be impeached. The legal title stood in Golder alone when the property passed to the assignee, but this had been procured through the fraud of the parties, and the property in truth belonged to the firm as respects the rights of the firm creditors in relation to it, and it is to remove this cloud and restore the true condition of things which are asked for by this bill. As remarked by Judge Curtis (Carr v. Hilton [supra]): "In my opinion the property fraudulently conveyed is to be deemed property of the bankrupt. and was by the decree vested in the assignee. This enables him to maintain the bill."

The 14th section of the bankrupt act [of 1867 (14 Stat. 522)] expressly declares, that "all the property conveyed by the bankrupt, in fraud of his creditors, .* * * shall in virtue of the adjudication of bankruptcy and the appointment of the assignee, be at once vested in such assignee, and he may sue for and recover the said estate."

The firm, in fraud of their creditors, made a transfer·of the firm property to one of the members of the firm. The case is brought within this section most clearly, and the assignee is authorized thereby to recover the same.

In Pratt v. Curtis [Case No. 11.375]. Lowell, J., says: "Great confusion would arise from any rule, which required creditors to follow the property on their own account; * * * and on the other hand, full power is given to this court, to set aside all fraudulent conveyances by which creditors are affected, and to marshal all assets."

The present case is quite similar to Re Waites [Id. 17,044], and to Re Johnson [Id. 7,-369]. By a dissolution of the firm when insolvent, and an application of the firm's property to the payment of the private debts of the partners, a fraud was attempted in the way of a preference in violation of the bankrupt law. In this latter case, Judge Lowell says: "The point to which I now refer is this: when the bankrupt act lays down a positive rule of distribution of the joint and separate assets, and creates a fraud before unknown, called a preference, it is obvious that partners, who owe debts of both kinds, may commit that fraud, by conveying their

joint property to a separate creditor, or even by dissolving their firm and dividing their property, and thus working out a preference to all their separate creditors." ·

The assignee in the present case has certainly good cause for resorting to this remedy, and for asking a complete rescission of the contract made at time of dissolution, and for a surrender and cancellation of the notes given by Golder to Mrs. Rogers; because if Mrs. Rogers is allowed to retain the notes and enforce her remedy against Elden as endorser, Elden in his turn would assert the validity of his mortgage, which he held as security for such liability. It may be, that the assignee might be in a condition to defend against such claim of Elden, and establish its invalidity under the provision of the bankrupt law; but the result, on the evidence now before the court, is not entirely free from doubt, and the assignee, therefore, should not be compelled to take the risk of a lawsuit, and rely upon establishing a successful defense against a security upon the property, given to the endorser at the time he assumed the liability. In the opinion of the court, the whole transaction being in fraud of the firm creditors, and it being the duty of the assignee to protect their rights, he was well justified in striking at the root of the evil, instead of endeavoring by circuitously striving to avoid in part its bad effects; and these participants in the fraud have no cause for complaint, if thereby they are deprived of all benefit from their fraudulent schemes, instead of being permitted to derive a partial advantage therefrom, by the assignees pursuing a different course. "Ex pacto illicito non oritur actio."

The transfer to Mrs. Rogers of the Golder notes was most clearly a fraudulent preference by John T. Rogers, Jr., of his individual creditor, and was therefore a fraud upon his other creditors; and for this cause, she could not be allowed to retain the notes, and withhold them from the plaintiff in his capacity of assignee of John T. Rogers, Jr. But upon the other grounds, I think there has been sufficient shown to set aside the whole transaction, and require Mrs. Rogers to surrender up and cancel the notes of D. C. Golder, received by her in satisfaction of her claim against John T. Rogers, Jr., and it is so ordered and decreed.

Bill dismissed as to Golder without costs. Decree for complainant against the other respondents.