Clements v. Jessup.

WILLIAM CLEMENTS, appellant,

v.

SILAS H. JESSUP, respondent.

1. An officer having process of execution or attachment against one partner may seize the latter's interest in partnership property; but a purchaser at a sale under such process will acquire only the interest of the partner in the partnership property, after the firm debts are paid and the affairs of the partnership are adjusted.

2. The capital of a partnership, *ex necessitate rei*, is the property of the firm, and goods and chattels, the property of one of the partners, put in by him as part of the capital he agreed to contribute to the partnership, become partnership property, and as such are liable for the payment of the firm debts in priority over the debts of the individual partner whose property they formerly were.

3. A and B became partners under articles of partnership, to continue for four years—A to provide the capital, and B to contribute his labor and services. As part of the capital, A put in certain goods and chattels he owned individually such as were necessary in the firm's business. After the firm commenced business, and the goods and chattels in question had been put in, an attachment issued against A for an individual debt.—*Held*, that a chattel mortgage upon the same property, made by both partners for a firm's debt, had priority over the title of a purchaser at a sale of them under the attachment, although the attachment was prior in time to the chattel mortgage.

On appeal from a decree advised by Vice-Chancellor Dodd.

Martin Shea and Constandt Schnorr became partners in the business of brewing, by articles of partnership dated November 16th, 1876—the partnership to continue four years from that

date, unless sooner dissolved by death or by mutual consent. On April 15th, 1878, a writ of attachment was issued out of the circuit court against Shea as a non-resident debtor, and was executed by attaching his right, title and interest in all the goods and chattels used in the partnership business of Shea & Schnorr. The debt for which the attachment was issued was Shea's individual debt. Judgment by default was entered, under which the auditor in the attachment sold all the right, title and interest of Shea in the goods and chattels attached to Clements, the appellant, for $779.

Shea & Schnorr, being indebted in $2,200 to Jessup, the respondent, for goods sold and money lent to the firm, on the 19th of June, 1878, gave to him a chattel mortgage to secure that indebtedness upon the same goods and chattels which had been attached. On the 15th of August, 1878, Schnorr filed a bill for the dissolution of the firm and an account of the partnership affairs. Clements and Jessup were made parties to this bill. A receiver was appointed, the property sold and the net proceeds of the sale, amounting to $895.13, have been paid into court. The vice-chancellor ordered this money to be paid to Jessup. From this order Clements appealed.

The goods and chattels seized under the writ of attachment, and also included in the chattel mortgage, were the individual property of Shea before the partnership was formed. They consisted of pumps, casks, barrels, horses and wagons, and other articles suitable for carrying on the brewing business. They were in and about the brewery and in use for the business when the attachment was served and the chattel mortgage given.

The articles of partnership provided that the capital stock of the copartnership should be $5,000, " the whole of which has been contributed" by Shea. " The said capital stock is to be used and employed in common between the partners for the support and management of said business to their mutual benefit and advantage;" Schnorr " to contribute to the business his knowledge, skill and ability in the art of brewing, and to devote all his time and attention for the joint interest, profit, benefit and advantage of the firm;" the profits arising from the business to

be divided equally, and each partner to share in the losses happening in the joint business. The articles of partnership provided for an increase of capital by leaving in the business part of the annual profits, in which event each party was to contribute to the increase equally; and also for an equal division of the stock and profits on the determination of the partnership, except that if the capital should not be increased it should all be paid to Shea, and only the increase of the capital should be divided equally between the partners. It appeared in the case that the partnership property was not increased by profits or otherwise, but remained the same as when the business was commenced.

*Mr. Charles F. Hill,* for appellant.

*Mr. Henry F. Goken* and *Mr. John V. Kernan,* for respondent.

The opinion of the court was delivered by

Depue, J.

The controversy is between Clements, a creditor of the firm holding a chattel mortgage executed by both partners for a firm debt, and Jessup, the purchaser at a sale under an attachment against one of the partners for an individual debt, the attachment being prior to the chattel mortgage in point of time.

The interest of a partner in partnership property is only his share on a division of the surplus, after payment of partnership debts; and partnership property must be applied first to the payment of firm debts. *3 Kent 37; Cammack* v. *Johnson, 1 Gr. Ch. 163; Matlack* v. *James, 2 Beas. 126.* A purchaser directly from a partner of his interest in the firm property acquires no title in partnership property except the vendor's share in the surplus after an accounting and adjustment of the partnership affairs. *Tarbell* v. *West, 86 N. Y. 280; Hill* v. *Beach, 1 Beas. 31; Cavander* v. *Bulteel, L. R. (9 Ch. App.) 79.* A sheriff having process of execution or attachment against one partner may seize and sell the latter's interest in partnership property; but a sale under such process will convey only the interest of the partner in partnership property after the firm debts are paid and the affairs

of the partnership are settled up.   *Brown* v. *Bissot*, *1 Zab. 46* ;
*James* v. *Burnett, Spen. 635 ; Linford* v. *Lent, 4 Dutch. 113 ;
Atwood* v. *Impson, 5 C. E. Gr. 150; Johnson* v. *Evans, 7 Man. &
G. 240; Garbett* v. *Veale, 5 Q. B. 408.*   Indeed, partnership credit-
ors, in equity, have an inherent priority of claim upon partner-
ship property over individual creditors, and a transfer of part-
nership property by one' partner, with the consent of the other
partners, or by all the partners, to pay individual debts, is fraudu-
lent and void as to firm creditors, unless the firm was then solvent
and had sufficient property remaining to pay the partnership debts.
*Menagh* v. *Whitwell, 52 N. Y. 146 ; Wilson* v. *Robertson, 21 Id.
587 ; Ex parte Snowball, L. R. (7 Ch. App.) 534; 2 Lind. on
Part. 658.*   The appellant, by his purchase at the sale under the
attachment against Shea, acquired, by virtue of the levy and sale
under that proceeding, only the interest of Shea in the property,
and the receiver's report shows that this property is required to
pay the debts of the firm.   In either aspect of the case, Jessup,
as a partnership creditor, holding a chattel mortgage on the
same property, executed by both partners for a firm debt, is en-
titled to priority, though his mortgage is subsequent in date to
the attachment, if the property attached and sold was in fact
partnership property.

The goods and chattels with respect to which this controversy
has arisen, were the individual property of Shea before the part-
nership was formed.   The contention is that they continued to
be Shea's individual property during the partnership, and that
the firm had no property in them or control over them except
for use in the course of the partnership business.

Sometimes it happens that property which is in individual
ownership is used for partnership purposes or in a joint advent-
ure upon a community of profits, and it remains the sole prop-
erty of the individual owner during the continuance of the part-
nership.   In other words, there may be a partnership in the
profits or in the business, and none in the property with which
it is carried on.   *2 Lind. on Part. 648, 649 ; Parsons on Part.
48.*   This condition of affairs arises generally where the prop-
erty consists of lands used for partnership purposes, and less fre-

quently with respect to chattels, such as office furniture or utensils of trade actually used by the firm. *Ex parte Owen, 15 Jur. 983; Ex parte Smith, 3 Madd. 63.* Cases of this description give rise to questions of considerable nicety, especially where the property consists of chattels necessary for use in the firm business, and the claims of partnership creditors are in the issue. This case, however, is free from all difficulty in that respect, for if one partner brings such property into the common stock as part of his contribution to the capital, it becomes partnership property. *2 Lind. on Part. 649; Robinson* v. *Ashton, L. R. (20 Eq.) 25; Cavander* v. *Bulteel, L. R. (9 Ch. App.) 79; Ex parte Morley, L. R. (8 Ch. App.) 1026.*

By the articles of partnership, Shea agreed to furnish all the capital stock to be used in the partnership business, Schnorr contributing only his personal services. The capital to be furnished by Shea was fixed at the sum of $5,000. Instead of advancing the money to buy the horses, wagons and implements necessary for the business, Shea provided them from stock which he had on hand. It does not appear that any credit for these articles as capital furnished by Shea was made in the firm book. But that circumstance is of little importance, inasmuch as Shea was to provide all the capital, unless there should be an increase of capital, as stipulated for in the articles of partnership, and, therefore, there was no need of an account to be kept of the contributions of the partners to the capital, in the situation the business was in. It is manifest from the kind of property, the use made of it for partnership purposes, the need of property of that description to be bought with money or provided otherwise, and the manner in which it was treated by the partners, that the chattels in controversy were considered as part of Shea's contribution to the capital, as much so as if he had furnished money out of pocket to purchase them. *Ex necessitate rei,* the capital of a partnership, like the capital of a corporation, becomes firm property though it was once the property of an individual partner, and was put in *in specie,* and as such is liable to the payment of firm debts in priority over the debts of the individual partner, whose property it formerly was. Having become part-

nership property, it could not be taken out of the firm under any agreement to that effect relative to the dissolution, until the partnership debts were paid. *Ex parte Morley, L. R. (8 Ch. App.) 1026 ; Ex parte Dear, (1 Ch..Div.) 514.*

The decree should be affirmed.

*Decree unanimously affirmed*