MACDONALD *v.* TROJAN BUTTON-FASTENER CO. *et al.*[1]

(*Supreme Court, Special Term, Rensselaer County.*   March 14, 1890.)

1. PARTNERSHIP—DISSOLUTION—RIGHTS OF PARTNERS INTER SE.
    A transfer, after notice of dissolution, by two members of a firm, of all the firm property, to a corporation organized by them for the purpose of continuing the business under a new arrangement, cannot affect the rights of a remaining partner, who does not consent thereto, and he is thereafter entitled to the exclusive control of all the firm property, for the purpose of winding up the partnership business.

2. SAME—USE OF FIRM NAME.
    After such dissolution, the corporation cannot be restrained from using the name which was arbitrarily adopted and used by the firm, nor from carrying on the same kind of business.

On motion to dissolve injunction.

John A. Macdonald, Albert W. Ham, and Arthur M. Wight were engaged in business as partners under the firm name of the "Trojan Button-Fastener Company." Notice of dissolution was given, and, before the partnership business was closed up, Ham and Wight, in conjunction with one Patterson and others, united in forming a corporation, styled "Trojan Button-Fastener Co., Incorporated," for continuing the business, and said Ham and Wight transferred all the property of the firm to the corporation. This action was brought by said Macdonald for an injunction against Ham, Wight, the corporation, Patterson, and others; and judgment was rendered giving plaintiff exclusive control of the firm property, and enjoining defendants from inter-

[1] Affirmed on appeal.   See 10 N. Y. Supp. 91.

fering in any way therewith. Defendants now move to dissolve the injunction.

· *M. Davenport* and *Esek Cowen*, for plaintiff. *C. E. Patterson* and *Smith & Parmenter*, for defendants.

FURSMAN, J. In May, 1885, the plaintiff and the defendants Ham and Wight entered into copartnership in the business of manufacturing and selling hand-power button-setting machines and foot-power button-setting machines, of leasing such machines to others, and in manufacturing and selling fasteners, staples, buttons, etc. The name and style adopted by the firm was the "Trojan Button-Fastener Company." The original articles provided for a partnership of one year, but the partnership was continued, by mutual consent, after that period, and down to about the time of commencement of this action. The articles contained a provision to the effect that the partnership, if not dissolved at the expiration of the year, might thereafter be dissolved by any partner, on giving a notice of 30 days to the others. The several partners, in pursuance of the partnership agreement, contributed various interests held by them, respectively, in certain letters patent affecting button-setting machines, and also other property pertaining to the business to be carried on by the partnership. Upon the execution of the partnership articles, the firm entered upon business at Troy, manufactured, or had manufactured, a large number of button-setting machines, issued licenses to others to use machines manufacturing staples or button-fasteners, etc., to be set by such machines, and established and maintained a prosperous and lucrative business. Before the commencement of this action, and about February 11, 1890, the defendants Ham and Wight, in conjunction with the defendant Patterson and others, united in the formation of a manufacturing corporation under the laws of this state, the trustees of which are the defendants Ham, Wight, and Patterson, and the corporate name of which is "Trojan Button-Fastener Co." The business of this company, as stated in the certificate of incorporation, is substantially the same as that carried on by the firm, The Trojan Button-Fastener Company, above mentioned. Immediately upon the formation of this corporation, the defendants Ham and Wight, without the knowledge or consent of their copartner Macdonald, assigned and transferred to it all the property of the firm, including the patents and leases above referred to, and put the corporation in possession thereof, and of the office and place of business of the firm, and of its books and other appurtenances of its business. Thereupon, by way of commencing business, the corporation caused to be issued, and sent out by mail to the customers and lessees or licensees of the firm, a circular in substantially these words: "All the leases, patents, and property of the copartnership known as the 'Trojan Button-Fastener Company' have been sold to an incorporated company, called 'Trojan Button-Fastener Co., Incorporated,' with a cash capital of $50,000. The working force of the old partnership enters the incorporated company, and, with the addition of increased capital and new inventions, are in a position to be of greater service than before. This transfer of the effects of the partnership to the incorporated company was hastened by the action of one of the partners, John A. Macdonald, who owned a quarter interest in the partnership, and who, we have reason to believe, has endeavored to deliver all its property into the hands of the Heaton Button-Fastener Company. We have no interest in common with the Heaton Company, and a sale of this kind would tend to create a monopoly of the button fastener business. We believe in honest competition, and know it for the best interests of our customers that the leases and machines remain in the hands of the Trojan Button-Fastener Company, Incorporated. Remittances, orders, and all mail should be addressed hereafter to 'Trojan Button-Fastener Company, Incorporated.'" The complaint charges, and the affidavits support the allegation, that the corpora-

tion is taking possession of the correspondence, drafts, checks, and orders sent to and intended for the firm, claiming the right to do so, and is excluding the plaintiff from the office of the firm, from possession of the firm property, correspondence, books, etc., assuming to hold and control the same by virtue of the assignment and transfer above mentioned.   Upon these and other facts set forth in the complaint and accompanying affidavits, a temporary injunction was issued, restraining the defendants from in any manner using the name "Trojan Button-Fastener Company," or any other name bearing a close resemblance thereto, in the button-fastener business, or from making any sales, or conducting or carrying on any business heretofore and now carried on by the firm known as the "Trojan Button-Fastener Company," of which firm the said plaintiff and the said defendants Albert W. Ham and Arthur M. Wight are members, and from using or licensing any of the button-fastening machines constructed under and in accordance with the patents mentioned in the complaint herein, or any part thereof, or any part of them, and from selling any staples for buttons to any of the licensees of the said firm known as the "Trojan Button-Fastener Company," and from receiving, or in any way interfering with, any letters, orders, drafts, or money directed, sent, or belonging to said firm, and from directing, requesting, or inducing the postmaster of the city of Troy, or any of his employes, or any person connected with said office, to withhold from said plaintiff any letters directed to the said Trojan Button-Fastener Company, or to "Trojan Button-Fastener Company, Incorporated," or to deliver any such letters to said defendants, or to either or any of them.   The order was afterwards modified, *ex parte,* so as to permit the corporation to receive mail matter addressed to "Trojan Button-Fastener Company, Incorporated," or clearly intended for it.   It is also made to appear that previous to the formation of the corporation the defendants Ham and Wight served on the plaintiff the notice of their intention to dissolve the copartnership provided for in the partnership articles.

Underlying the law of partnership is that of agency.   The partners are severally agents of the firm, and of each, as to all matters pertaining to the conduct of the partnership business while the partnership continues, and to the winding up of its affairs when it is dissolved.   As in all other agencies, the authority to act for the firm is limited to such matters as are within the scope of the partnership business, and are fairly among the purposes of the partnership, as indicated by the partnership articles.   In a manufacturing and mercantile partnership, this includes the manufacture and sale of such articles as the partnership agreement intends, and the doing of all things properly incident thereto.   Unless specifically prohibited by the agreement, either partner may contract debts in the business of the firm, and may pay its debts. To this end, it is competent for one partner to transfer the property of the firm in payment of a firm debt.   This is strictly within the scope of the partnership business.   The law appropriates the partnership property to the payment of partnership debts, to the exclusion of the individual debts of the partners, and requires such appropriation to be made before any division among the partners is had.   The authorities are numerous that one partner may transfer partnership property to a creditor in payment of a firm debt; and, in the absence of fraud, such transfer is valid not only against the other partners, but other creditors of the firm also.   *Mabbett* v. *White,* 12 N. Y. 442, and cases cited on page 454.   I have found no case, however, holding that one partner may, without knowledge of the other, transfer the entire property and assets of the firm to one who is not a creditor, with the object and intent of putting an end to the partnership business, and placing the partnership effects beyond the reach and control of his copartner.   That the transfer by Ham and Wight to the corporation in this case was made with such purpose cannot be doubted.   The firm was solvent, and doing a prosperous business. The corporation was formed, avowedly, to carry on a like business.   Ham

and Wight were instrumental in its formation, and were named as two of the three trustees in the certificate of incorporation.  Immediately upon its formation, they transferred to it the entire assets of the firm, and turned over to it its working force, its books, and business office.   There is no pretense that the corporation was a creditor of the firm, nor that this transfer was made in the course of its business, or in pursuit of the legitimate objects for which the partnership was formed.   The intent of this transfer is evidenced by the circular issued by the corporation immediately thereafter.   It was sent out to the customers of the firm, and to persons holding leases of machines from it, and was signed by the corporate name, which was also the name of the firm.  It declared that all the leases, patents, and property of the firm had been sold to it, and that the working force of the firm had entered its employment.  Without ever having had a customer, it stated that the company was in a position to be of greater service to "our customers than ever before," and advised that "remittances" and "all mail" should. in future be addressed to it.  It is clear that the corporation, by means of this circular, intended to possess itself of the money, checks, and mail matter that in the course of the firm business, as well as in winding up its affairs, might otherwise be sent to it.  The sale and transfer was not made in the business of the firm, but in hostility to it, and for the purpose above indicated.   It is invalid as a sale of the entire assets of the firm, and, the corporation having full knowledge of all the circumstances of the firm, its objects and business, and that the plaintiff neither knew of or consented to it, was ineffectual to convey title to the whole property to it.   It is settled law that one partner cannot, without the consent of the others, make an assignment of all the firm assets for the benefit of the creditors.   The reason is that it is not within the scope of the partnership enterprise, is not a part of the ordinary business of the copartnership, but is subversive of it; and authority to do so cannot be implied from the partnership relation.   *Welles* v. *March*, 30 N. Y. 344; *Klumpp* v. *Gardner*, 114 N. Y. 153, 21 N. E. Rep. 99.   These reasons apply with equal force to a sale and transfer of the entire property and assets of a firm by one partner, without the consent of the others, to a person having full knowledge of the intent thereby to destroy the business of the firm, and deprive the non-consenting partner of all control over its property.   Moreover, the defendants Ham and Wight are not only incorporators and stockholders, but constitute two of the three trustees of the corporation.   The sale and transfer of the firm property was, therefore, practically to themselves.   As stockholders, they still own a share of the property sold by them to the company, proportionate to their interest in the corporation, and as they constitute a majority of its trustees, they are able to exercise absolute and exclusive control over all its property and affairs.   While this is of no importance, so far as their own individual property and interests are concerned, it cannot be sustained when it involves also the property and interest of others, who do not consent to it.   A sale of all of a firm's property, by two out of three partners, to themselves, without the knowledge or consent of the others, could hardly be upheld.   Such is the practical effect of the sale in this case, and it cannot be sustained on either principle or authority.

Assuming, however, that the transfer in question was effectual as a transfer of the interests of Ham and Wight in the partnership property and assets, it did not confer upon the corporation any title to the property itself, nor any right to its possession and control against the plaintiff.   All that can be thus transferred is the interest of the partners making the sale which may remain in the surplus after the partnership debts are paid, and the rights of partners ascertained and determined.   It is well settled that a purchaser from one partner of his interest in the partnership acquires no title to any share of the partnership effects, but only his share of the surplus after an accounting and an adjustment of the partnership affairs.   *Tarbell* v. *West*, 86 N. Y. 280, 287.

In *Menagh* v. *Whitwell*, 52 N. Y. 146, Judge RAPALLO affirms that "purchasers of the share of an individual partner can only take his interest. That interest, and not a share of the partnership effects, is sold; and it consists merely of the share of the surplus which shall remain after the payment of the debts and settlement of the accounts of the firm." The rights of a transferee of the individual share or interest of a partner in the joint property are but a right to an accounting, and to what remains after an adjustment of the partnership accounts and dealings. *Nicoll* v. *Mumford*, 4 Johns. Ch. 522. It can make no difference that the partnership is dissolved. After dissolution, the powers and authority of the individual partners are still more limited than during its existence. They can then make no new contracts on behalf of the firm, nor incur any new obligations to bind it. They cannot even dispose of its property save in payment of its debts, and in the ordinary course of closing up its affairs. "In case of a dissolution, each partner holds the joint property clothed with a trust to apply it to the payment of the joint debts, and, subject thereto, to be distributed among the partners according to their respective shares therein." Story, Partn. § 360. And Judge ALLEN, in *Menagh* v. *Whitwell*, declares that "all must unite in order to give effect and validity to any disposal of the property, except in execution of the trust or in the ordinary course of business." *Geortner* v. *Trustees*, 2 Barb. 625. After dissolution, the right and duty to wind up the affairs of the partnership still remain, and, where the other partners have disposed of their whole interest, remain in the continuing partner. The partners who have thus disposed of their entire interest in the partnership have thereby divested themselves of all right to the control of its property, and even to share in the winding up of its business, or to participate in the final accounting and adjustment of its affairs. The purchaser of a partner's interest cannot withdraw his share of the joint effects. They must remain in the possession of the continuing partner, for the purpose of winding up the partnership. ALLEN, J., in *Menagh* v. *Whitwell*, above cited. In such case "the remaining or stationary partner would be entitled to hold possession for the purpose of paying off the debts and winding up the assets of the firm." *Horton's Appeal*, 13 Pa. St. 67. If these views are correct, it follows that the plaintiff is entitled to have possession of all the property and effects of the firm the Trojan Button-Fastener Company, for the purpose of winding up its affairs, including its books, papers, and correspondence, and that the defendants have no lawful right to withhold them from him, nor to obstruct or interfere with him in the exercise of his rights and duties in this respect.

The injunction as issued, however, restrains the defendants from using the name "Trojan Button-Fastener Company" in its business. I do not think the defendant corporation can be lawfully deprived of this use. The name, the "Trojan Button-Fastener Company," under which the firm carried on its business, is a mere arbitrary designation adopted by it when the copartnership was formed. Neither partner can have any exclusive right to its use; nor can its use by third persons be prevented after a dissolution of the firm first employing it, and a discontinuance of its business. *Lathrop* v. *Lathrop*, 47 How. Pr. 532; *Morgan* v. *Schuyler*, 79 N. Y. 490. The corporation has, also, a clear right to engage in the same business as that carried on by the firm. The claim of the plaintiff to an exclusive right either to carry on the business, or to employ exclusively the patents and appliances necessary thereto, is not, upon the facts disclosed in this case, founded upon any known legal principle; nor, the partnership being dissolved, can it be prohibited from licensing others to use any machine the patent on which it may be the owner of, in whole or in part. Certainly, it cannot be restrained from selling articles in common use, such as buttons and staples for buttons, to any person who may wish to buy of it, whether such person has heretofore been a customer of the firm or not.

I conclude, therefore, that the defendants should be restrained pending this action from withholding from the plaintiff the property of the firm, including its books and papers, and interfering with him, unless by legal process, in winding up the partnership business affairs, and from receiving the letters, checks, drafts, or money sent by mail, and clearly directed or intended for the firm, and from in any way preventing the receipt of such letters by him from the post-office. In all other respects the injunction order should be dissolved.