WILLIAM R. SEWARD et al., Respondents, *v.* HENRY F. HUNTINGTON, impleaded, etc., Appellant.

Three persons, who had jointly indorsed the notes of a manufacturing corporation, entered into a written agreement with each other to the effect that if the corporation should fail to pay said notes at maturity they would each pay one-third of the amount unpaid, and in case of failure of either to pay his proportion, and either of the others should pay more than his share, the one so paying should "have and recover from the one so failing an amount equal to his aliquot part." It was also agreed that each of the parties should execute, to a trustee named, a mortgage as security for the performance of his agreement; and it was provided that in case of failure of one of the parties to pay his share of the unpaid paper, "and which either of the parties shall have paid in whole or in part, then and in that case the said trustee is empowered, and it shall be his duty, at the request of the parties so having paid, to foreclose the mortgage made by the party" so failing to pay. Mortgages were executed as required; each stated that it was given to secure the payment of $25,-000, according to the conditions of the agreement. The corporation made default in the payment of certain of the notes. In an action brought by the trustee and the holders of certain of said notes to foreclose one of the mortgages, it was shown that the corporation and the indorsers

were insolvent, and that nothing had been paid upon said notes by any of the parties. *Held*, that the trust was not created for the benefit of the creditors, but solely for that of the parties to the agreement; that it imposed no primary liability upon the latter ; and that the holders of the notes were not entitled to be subrogated to the rights of the indorsers in the securities; also that the action could not be maintained, as there had been no breach of the condition of the agreement, authorizing a foreclosure, as neither of the other parties thereto had paid any portion of the sum which the mortgagor was thereby bound to pay.

*Lawrence* v. *Fox* (20 N. Y. 268) and *Burr* v. *Beers* (24 id. 178), distinguished.

Also *held*, that one who had purchased the mortgaged premises upon foreclosure of a junior mortgage, executed by the same mortgagor, the foreclosure suit having been brought prior to the adoption of the last seven chapters of the Code of Civil Procedure, succeeded to the rights of the mortgagor (2 R. S. 192, § 158), and was entitled to come in and defend.

*Seward* v. *Huntington* (26 Hun, 217), reversed.

(Argued October 18, 1883; decided November 20, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made December 30, 1881, which affirmed a judgment in favor of plaintiffs, entered upon the decision of the court on trial at Special Term. (Reported below, 26 Hun, 217.)

This action was brought to foreclose a mortgage executed by defendants Jones and wife to the plaintiff Seward, as trustee, etc., given, as stated therein, "as a security for the payment of the sum of $25,000, according to the terms and conditions expressed in certain articles of agreement and decla ration of trust executed by Jarvis Lord, Ezra Jones and Burrall Spencer, of even date herewith."

The substance of said agreement as well as the other material facts are stated in the opinion.

The other plaintiffs herein claimed as holders of certain promissory notes executed by the Rochester Iron Company, and indorsed by the parties to said agreement, the payment of . which, it was alleged in the complaint, was secured by said mortgage.

*Theodore Bacon* for appellant. The mortgage and the agreement of even date referred to in it are to be regarded, for

purposes of construction, as but a single instrument. (*Marsh* v. *Dodge*, 66 N. Y. 533.) The breach of the provision of the agreement that each of the parties would pay one-third of the notes upon the maker's failure to pay them is no default in the mortgage, as it was not given on such condition. · (*Garnsey* v. *Rogers*, 47 N. Y. 233; *Roe* v. *Barker*, 83 id. 431, 435; *Root* v. *Wright*, 84 id. 72.) The creditors of the iron company, who have joined themselves with Mr. Seward as co-plaintiffs, but are not his *cestuis que trustent*, have at least no better rights under these mortgages than the mortgagee, and those for whom he is expressly declared to be a trustee. (*Pratt* v. *Adams*, 7 Paige, 615, 627.) The indorsers and mortgagors are sureties, and only sureties. Neither their personal liability, nor that of their property is to be extended by construction beyond the precise terms of their contract. (*Wright* v. *Russell*, 3 Wils. 530; *Myers* v. *Edge*, 6 Term R. 248; *Walsh* v. *Bailie*, 10 Johns. 180; *Wright* v. *Johnson*, 8 Wend. 512; *Dobbin* v. *Bradley*, 17 id. 422; *Walrath* v. *Thompson*, 6 Hill, 540; 2 N. Y. 185; *McCluskey* v. *Cromwell*, 11 id. 593; *Leeds* v. *Dunn*, 10 id. 469; *Stewart* v. *Ranney*, 26 How. Pr. 279; *Barns* v. *Barrow*, 61 N. Y. 39; *Smith* v. *Starr*, 4 Hun, 123.) Where sureties execute each to the other as security between themselves only mortgages for the payment of the debt, such mortgages are not available to the creditors of the principal upon the principle of subrogation. (*Hampton* v. *Phipps*, 28 Alb. L. J. 109; *Maure* v. *Harrison*, 1 Eq. Cas. Abr. 93; *Wright* v. *Marley*, 11 Vesey, 12; *Hopewell* v. *B'k of Cumberland*, 10 Leigh, 206.)

*James Breck Perkins* for respondents. The respective indorsers, being each liable for the whole amount of the debt, to pay which this covenant was made, it created a privity between the holder of the paper and the covenantee. (*Lawrence* v. *Fox*, 20 N. Y. 268.) A creditor has a right to enforce the securities which the principal debtor has given to any surety for his, the creditor's, benefit. The holders of the indorsed paper have a right to foreclose these mortgages, either in their

own names, or through the instrumentality of Seward, the trustee. (*Curtis* v. *Tyler*, 9 Paige, 432 ; *Bleeker* v. *Bingham*, 2 id. 246 ; *Campbell* v. *Smith*, 71 N. Y. 26–28 ; *Rogers* v. *Kelly*, 88 id. 234, 238–9.) Each of the three parties having agreed to pay one-third of the debt for which the others were liable as indorsers of all the paper, and having executed the mortgage to secure that payment, the mortgage, even if running to the indorsers, could be enforced by the holders of the paper. (*Nat. B'k of Seneca* v. *Bigler*, 83 N. Y. 51, 60, 61 ; *Curtis* v. *Tyler*, 9 Paige, 432 ; *Boyd* v. *Parker*, 42 Md. 182.)

RUGER, Ch. J. In the application to this case of the principle, that creditors and sureties are mutually entitled to be subrogated to the rights which either possess in any securities contributed by the debtor as an indemnity to such party or for the discharge of such indebtedness, the court below, we think, erred through a misconception of the meaning and object of the agreement out of which the mortgage in suit arose.

The mortgage sought to be foreclosed was executed by Ezra Jones and Catherine D., his wife, to William R. Seward, trustee. The names of the proposed beneficiaries, do not appear in the mortgage, but it was therein stated to have been given to secure the sum of $25,000, according to the conditions of a certain agreement and declaration of trust therein referred to.

These instruments having been simultaneously executed by the same parties and being mutually referred to, must be considered together as one contract. The declaration of trust is prefaced by the following sentence : "Articles of agreement and declaration of trust, by and between Jarvis Lord, of Pittsfield, Ezra Jones, of Rochester, and Burrell Spencer, of Buffalo." After reciting the fact that the several parties thereto were each interested in the Rochester Iron Company and that they were and would probably continue to be joint indorsers upon its paper, it proceeded : " therefore we have agreed each with the other, and we do agree each with the other," if the said company shall fail to pay at maturity any of said indorsed notes, we will

each and severally pay one-third of the amount of such notes as the company shall fail to pay. The consequences of the failure of either to perform this agreement to pay were then described as follows: " If any or either of the parties hereto shall fail to pay his or their proportion or aliquot part of said notes, and either of the said parties shall pay more than his aliquot part thereof, *he shall have and recover* from the one so failing, an amount equal to his aliquot part." It was further provided that each of the parties should execute with his wife a mortgage to Wm. R. Seward, as trustee, *as security that each of said parties should keep and perform his agreement.*

The contracting parties then apparently, for greater precaution against a misconception of their intentions, inserted a further provision describing the precise conditions upon which alone the trust created should become operative. They say : " And in case any one of the parties hereto shall fail to pay his aliquot part of any such note or notes of the said company, and which the company shall have failed to pay at maturity, and which either of the parties hereto shall have paid, in whole or in part, *then and in that case* the said trustee is empowered, and it shall be his duty, on the request of the parties so having paid, to foreclose the mortgage so made by the party hereto, and who has so failed to pay his said aliquot part, and to collect thereby, and by the sale of the land so mortgaged, the amount sufficient to pay his aliquot part, and out of the money so collected or realized on such sale, he do pay with costs the aliquot part of the party so failing, and whose property shall be so sold, to the party who shall have so paid, and at whose request the said foreclosure and sale shall have been made." The mortgage in suit was executed under this agreement, and upon proof that the Rochester Iron Company made certain promissory notes which were indorsed by Lord, Jones and Spencer together, with one S. M. Spencer, then outstanding and unpaid, the holders of such notes claimed to enforce this mortgage for their own benefit, to the extent of one-third of the gross amount of such unpaid notes.

It was shown that the Rochester Iron Company, as well as

each of the indorsers were insolvent, and that nothing had been paid upon the notes by any of the parties liable thereon.

No evidence was given on the trial aside from their indorsements showing any legal or moral obligation on the part of either of the mortgagors to pay the notes, or that they had in any way become primarily liable for their payment, unless such liability was created by the declaration of trust. Upon this proof the plaintiffs were allowed, by the judgment of the Special Term, to recover against the defendant Jones, for one-third of the aggregate amount of notes of the Rochester Iron Company indorsed by Jones, Lord and Spencer, which remained outstanding and unpaid. This judgment was affirmed at General Term, and from its decision this appeal has been taken.

The theory upon which this result was reached in the court below, as derived from the opinion of the learned judge who wrote therein, concisely and fairly stated, was, that one of the objects of the creators of said trust, in the execution of that instrument, was to secure to the creditors of the Rochester Iron Company the payment of their claims, and then upon the assumption that because these indorsers had each, as between themselves, assumed the payment of one-third of their joint liability as indorsers, in case the maker of the notes failed to pay them, that, therefore, they became primarily liable to each other for such payment, and that being primarily liable to each other, they would also become thus liable to the holders of such paper, and, therefore, the securities furnished by them to each other were available under the rule of subrogation for the benefit of such holders, as a fund in the hands of a surety furnished by a debtor.

We cannot agree with them either in the construction which has been thus given to this instrument, or in the consequences which have been claimed to flow from such construction. We do not think that the declaration of trust contemplated any benefit to the holders of these claims, or that the said indorsers thereby became primarily liable for the payment of any part of such notes, either to each other or to the holders of them.

If the effect of the agreement between the parties to it could be so construed as to make them primarily liable to each other

for any part of the debt in question, it could not be so extended as to create that liability toward parties not named therein or intended to be benefited by its provisions. ( *Garnsey* v. *Rogers*, 47 N. Y. 241; 7 Am. Rep. 440; *Pardee* v. *Treat*, 82 N. Y. 385; *Root* v. *Wright*, 84 N. Y. 75; 38 Am. Rep. 495.)

The relation thus created would be a purely conventional one, depending upon no principle of equity applicable to the situation of the parties to support it, and necessarily confined to the terms and conditions imposed by the parties creating it.

The effect ascribed by the court below to this declaration of trust, seems to us to be not only a perversion of its true meaning, but directly opposed to the expressed object and conditions of that instrument.

It can be only by wresting a single sentence in this instrument from its context, and giving it an arbitrary force and meaning, that the semblance of color can be given to the contention of the plaintiffs.

It is argued that the clause wherein the indorsers provide, upon the contingency of the failure of the maker to pay its notes, they will each assume and pay one-third part of the notes so indorsed and remaining unpaid by the maker, imposes a primary liability upon such indorsers to the holders of such notes.

It seems perfectly clear that this clause, even considered by itself, by recognizing the primary liability of the maker repudiates such liability as to themselves, but taken in connection with the other provisions of the instruments, amounts to a mere declaration of equality among parties, who might be chargeable with the payment of these liabilities, and an inducement to the assumption of the new obligations which they therein provided for each other.

The contract thereby made, taken in its strongest form against the indorsers, was a conditional agreement to pay a part of the debt precisely the same in character with that created by their original indorsements of the notes in question. By giving effect to the rule that all parts of an instrument shall be considered together in determining its meaning, it is difficult to see how this contract can be misconstrued.

It is in terms confined as to the remedies therein provided to the contracting parties, and its whole object and design, as appears from necessary implication, as well as express language, seems to be to secure equality of contribution, as among themselves, in the payment of their joint obligations.

There seems to have been no motive, inducement or consideration for the parties to assume a new conditional liability to the creditors for a third part of a debt which they were each, by virtue of their indorsements, already under the same conditional liability to pay to him in full.

While the parties undoubtedly had an object in protecting themselves from any greater than a proportional liability upon their indorsements, it does not appear that they were under any obligation, received any benefit, or had any motive for giving increased security to the creditors of the Rochester Iron Company.

These several contracting parties were simply indorsers on the paper of the Rochester Iron Company, and were not, either as between themselves or the creditors of such company, primarily liable for the payment thereof.

The property which was pledged as security for the performance of this agreement was the individual property of the indorsers, and did not in any sense constitute a fund created by a debtor in the hands of either creditor, or surety, devoted to the redemption of his obligations.

This property was specially pledged by each to the other for the purpose of securing to each other the respective deficiencies of the pledgor in making equal contribution to the payment of their joint obligations.

The creditors of the Rochester Iron Company were neither named or referred to in the agreement, and it does not appear that their rights were then at all in the contemplation of its parties.

The express provisions of this agreement require that each and all of the following conditions should occur before any liability whatever should arise upon the mortgage in question :

*First.* That the Rochester Iron Company should make its

promissory notes, which should be jointly indorsed by the said Lord, Jones and Spencer.

*Second.* That the said company should fail to pay one or more of such notes at maturity.

*Third.* That one of the parties to said agreement should pay the whole, or a part of such notes upon the failure of the maker to do so.

*Fourth.* That the other party should fail to pay an equal share, or to repay to the party so paying his aliquot portion of any payment made by either of the other parties, upon the notes in question.

We fail to see in the evidence in the case any proof of such a performance of the conditions of this agreement as would give a right of action to any party thereon.

It was expressly provided that upon the happening of each and all of the above conditions, and by established rules of construction, impliedly provided that in no other event was the trustee authorized to enforce the security in his hands, and it could then be enforced against the mortgagors only for the purpose of raising a sufficient sum to repay to his co-contractor the mortgagors' aliquot proportion of such sum as the co-contractor had overpaid upon such notes.

There was no event, either expressly or by implication, provided in the agreement upon which any moneys collected upon this mortgage could be diverted from this purpose and paid to any other person, than to one of the co-contractors or his representative.

It follows as a necessary implication from the premises that neither of the parties to the agreement were either as to themselves or any other persons primarily liable for the payment of the notes of the Rochester Iron Company, but were liable only to each other, and only for such part thereof as their co-contractors should pay in excess of that portion which the respective mortgagors should also pay.

Although they each agreed with the other, in case they jointly became liable to pay any part of such paper, that they would respectively pay one-third part thereof, yet they further

provided, in explicit terms, what should be the sole and only consequence of a failure to perform such promise, and that was that the mortgage should be used to enforce equality between the parties, and used for that purpose alone.

There being no original liability of these parties for the debts in question, it was certainly competent for them, by the contract between themselves, to limit the liability which they were about to assume, in such way and by such language as they saw fit to use. Such a contract cannot be enforced except according to the meaning and intent of the parties making it.

By the judgment of the court below the mortgagor has not only been made liable contrary to the conditions upon which he expressly limited his liability, but is made liable to a person who was impliedly excluded from the benefits of his contract Not only this, when we consider that neither of his co-contractors have paid any part of such indorsed notes, and that they are also now insolvent, the party whose property may be valuable enough to produce such a result will be forced to pay much more than the express limit fixed by contract upon his liability.

We are, therefore, of opinion that this case is not within the principle laid down in *Lawrence* v. *Fox* (20 N. Y. 268), and *Burr* v. *Beers* (24 id. 178), for the reason that the agreement in question was not intended by the parties thereto to operate for the security or benefit of the plaintiffs, who are creditors of the Rochester Iron Company. (*Garnsey* v. *Rogers supra ; Pardee* v. *Treat, supra ; Root* v. *Wright, supra*.)

We are also of the opinion that there has been no breach of the conditions of this agreement authorizing an action upon the mortgages given to secure its performance.

We think this case comes directly within the principles decided in the case of *Hampton* v. *Phipps*, in the Supreme Court of the United States, with a copy of the opinion in which, written by Mr. Justice MATTHEWS, we have been furnished by the appellants. There, as here, the joint sureties upon certain notes had agreed between themselves to become in-

dividually liable for the payment of a specified proportion of the aggregate debt, secured by their joint guaranties; and there, as here, mortgages were respectively executed by these sureties to secure the performance of their agreement. The learned judge after stating the respective rights of the creditor and surety, to be subrogated to, and have the benefit of all or any securities furnished to either by the principal debtor, says: "It follows that the present case cannot be brought within either the terms or the reason of the rule, for as the property in respect to which the creditors assert a lien was not the property of the principal debtor, and has never been expressly pledged to the payment of the debt, so no equitable construction can convert it, by implication, into a security for the creditors." And he further says: "But the conditions of those mortgages have not been broken, and the very fact which is supposed to confer the right upon the creditor to interpose — the insolvency of the sureties — has rendered it impossible for either to fasten upon the other a breach of the condition of his mortgage. As neither can pay his own proportion of the liability which they agreed to divide, neither can claim indemnity against the other for an over-payment."

We are further of the opinion, that the defendant, Henry F. Huntington, has succeeded to the rights and position of the mortgagor, Ezra Jones, through his purchase of the mortgaged property upon the foreclosure and sale thereof under a junior mortgage. This purchase having taken place under a decree made in an action instituted for the purpose of foreclosing such mortgage, previous to the adoption of the last seven chapters of the Code of Civil Procedure, is governed by the provisions of the Revised Statutes relating thereto.

Under a conveyance upon such a foreclosure and sale, the purchaser succeeds not only to the rights of such prior mortgagee, but also to the right of Jones, the owner of the equity of redemption. It is expressly provided by statute that the deed given under such a proceeding shall be as valid as if the same had been executed by the mortgagor and mortgagee, and shall constitute an entire bar against them and all parties to the suit,

their heirs and all claiming under such heirs. (2 R. S. 192, § 158; *Holden* v. *Sackett*, 12 Abb. Pr. 474.)

It follows that Huntington was rightfully substituted as defendant in the place of Jones, and is entitled to protect the property purchased by him from the unfounded claim asserted thereto by the plaintiffs in this action, by an appeal from the judgment sustaining such claim.

The judgment of the General and Special Terms should be reversed, and judgment ordered for the defendant.

All concur.

Judgment reversed.