JOHN EDICK, RESPONDENT, *v.* ELTON GREEN AND BYRON POND, APPELLANTS, IMPLEADED WITH L. LASEUR VIRGIL.

ORRIN COLE, RESPONDENT, *v.* SAME.

*Agreement by an incoming partner to pay firm debts — when it cannot be enforced by a firm creditor — attachment — what facts must be stated in the papers therefor — Code of Civil Procedure, secs.* 635, 636.

A partnership which had existed between Virgil and Green from January, 1881, to October 4, 1884, was dissolved on the latter date by the sale by Virgil of his interest in the firm, subject to the firm debts, to one Pond. By the written agreement then made Virgil agreed that Pond's interest should be an equal undivided one-half, and covenanted that the collectible accounts were sufficient to pay all the debts due from the firm, and that if they could not, after efforts to collect them, be collected he would make good the deficiencies. In consideration of this covenant Pond agreed to pay one-half of the debts of the said firm and to take Virgil's place in the firm as an equal partner.

In an action, brought by a creditor of the firm of Virgil & Green against Green and Pond and Virgil, an attachment was issued against the property of the defendants Green and Pond upon the ground that they had no property, except such as was owned by the firm, and that they were transferring the firm property to their individual creditors with intent to cheat and defraud their firm creditors.

*Held,* that the agreement between Virgil and Pond imposed no liability upon the the latter to pay the firm debts, which could be enforced by creditors holding the same; and that neither this action nor the attachment could be sustained.

That the attachment should be set aside as to Green, because the facts stated in the affidavit did not show that he had transferred any firm property to individual creditors with a fraudulent intent.

The verified complaint set forth four causes of action, two on notes made by the old firm, one for goods sold and one for rent. The facts as to one note were alleged positively, those constituting the other three causes of action on information and belief. An affidavit made by Virgil, one of the original debtors, made the complaint a part thereof and alleged that it was true, except as to the allegation as to indorsement and transfer of the notes, as to which his information was obtained from the plaintiff, and which he believed to be true. An affidavit by the plaintiff stated "that the amouns of his claim on said causes of action is the sum of $235.92, over and above all counter-claims and offsets known to deponent."

*Held,* that the affidavit of Virgil and the complaint should be read together.

That the affidavits and complaint made a case within the provisions of section 636 of the Code of Civil Procedure.

That it was not necessary that the affidavits should state, in the precise language of section 635 of the Code of Civil Procedure, that the cause of action was for a "breach of contract, express or implied, other than a contract to marry," if equivalent words were used.

That it was not necessary that the plaintiff should state in his own affidavit the grounds upon which he claimed to be entitled to an attachment, and that it was sufficient if they were shown to exist either by his own affidavit or by the affidavits of others.

APPEALS from orders made in the above entitled actions, denying motions to vacate attachments issued against the property of the defendants Green and Pond.

Virgil and Green were equal copartners in business from January, 1881, until October 4, 1884, when Byron Pond purchased the interest of Virgil, and a new firm under the name of Green & Pond was formed, which continued in business for about ten days. Virgil & Green became indebted upon five copartnership notes, which this action, No. 1, was brought to recover.

When Pond purchased the interest of Virgil, a written agreement was entered into, which provided that: "He (Virgil) hereby sells and assigns to said Pond all his right, title and interest in the hardware firm of Virgil & Green and his interest in the goods and accounts of said firm, being an undivided one-half of said goods and accounts and of all property of said firm subject to the debts of said firm of Virgil & Green, and whereas said Virgil and Green have had each a separate account on company book for cash, etc., drawn out of firm; now, therefore, said Virgil agrees to settle and liquidate that matter between himself and said Green so that the share in said goods, property, etc., shall be an even undivided one-half of all matters, so that said Pond shall be an equal joint owner with said Green of said stock and property. And, whereas, said firm of Virgil & Green are owing certain company debts, and have also on their books certain numerous accounts due to said firm from their customers and others, said Virgil does hereby covenant and agree with said Pond that there is sufficient collectible accounts due said firm, which he hereby assigns his interest therein to said Pond, to pay all the company debts due from said firm, and if not after prompt effort to collect on the part of said Pond, he will make up for said deficiency, and in consideration of said covenant said Pond agrees to pay the one-half of the debts of said firm and

take said Virgil's place in the firm as an equal partner, and will do all on his part to collect and pay said debts."

November 3, 1884, the first action was brought to recover $777.14, the amount due on the five notes above mentioned. Upon the grounds that October 14, 1884, Green assigned to his wife his interest in the assets of Green & Pond for the purpose of defrauding the creditors of Virgil & Green, and that Pond was about to make a fraudulent disposition of his interest in the firm assets, and that neither Green or Pond had any property other than their interests in the firm assets. An attachment was issued requiring the sheriff to attach so much of the property of "Elton Green and Byron Pond, or either of them," as would be sufficient to satisfy the judgment to be recovered in this action.

The second action was brought November 5, 1884, to recover upon two promissory notes made by Virgil & Green, for goods sold to Virgil & Green at a price agreed upon, and for rent due on a written lease executed by Virgil & Green. Four causes of action are stated in the complaint, and a judgment is demanded against all of the defendants for $232.92.

The moving papers in this case are like those in action number one. The plaintiff, in his affidavit, stated "that the amount of his claim on said causes of action is the sum of $235.92, over and above all counter-claims, discounts and offsets known to deponent." This followed a verified complaint, which alleged positively the execution and delivery of one of the notes set out to plaintiff, and his ownership of it, and also alleged the other causes of action on information and belief. There was also an affidavit of Virgil, one of the defendants, who was one of the principal debtors, as to all of the causes of action set out, in which affidavit it was alleged that the complaint was true, except as to matters therein "respecting the indorsements and transfers of the promissory notes and causes of action therein named to said plaintiff, and as to those statements he is informed of them by the plaintiff herein, and believes them to be true, and said complaint is hereby made a part of this affidavit" Green and Pond made individual motions in both actions for an order vacating the attachments. The motions were made on the papers on which the attachments were granted. The motions were denied. But

one order was entered in each action. Green and Pond jointly appeal in both actions.

*J. W. Shea*, for appellant Pond.

*Merrick Stowell*, for appellant Green.

*C. C. Brown*, for the respondents.

VANN, J.:

The affidavits upon which the warrant of attachment was granted do not state, in the precise language of the Code, that the plaintiff has a cause of action for " breach of contract, express or implied, other than a contract to marry," but, as held in *Lamkin* v. *Douglass* (27 Hun, 517), it is not necessary that the affidavit should contain the exact words, if equivalent words are used. Evidence by which the judge may be lawfully satisfied of the truth of the matters required to be shown is sufficient. (Id.) The allegations of the complaint, which was one of the moving papers, are in form set forth and verified upon information and belief only, but the affidavit of Virgil, one of the defendants, states that he has read said complaint, knows its contents, and that it is true of his own knowledge, except as to one statement, which is established by the plaintiff in a second affidavit, not a part of the verification. An inspection of the complaint, which thus became competent evidence of the facts therein set forth, shows that the action is upon contract only.

The appellants insist that the plaintiff must state in his own affidavit the grounds upon which he claims the right to have an attachment issued, and that he may then prove facts to establish those grounds by the affidavits of other persons. There is no foundation in the statute for this position. (Code of Civil Pro., § 636.) The plaintiff is required to show two facts : (1.) That he has one of the causes of action specified in section 635. (2.) That the defendant comes within one of the provisions relating to non-residence, absence, fraud or concealment. He is required to show these facts by affidavit and may show them by the affidavit of himself alone, or of himself and others, or of others only, according to circumstances. The only authority cited by appellants to sustain their position (*Stewart* v. *Brown*, 16 Barb., 567), was a case where an attachment

was issued under the Revised Statutes by a justice of the peace. (2 R. S. [4th ed.], 431, §§ 24, 26.) As under that statute a written application specifying the grounds was required in addition to an affidavit, the authority has no application.

Whether the papers show that the plaintiff has a cause of action against Byron Pond is a question not free from doubt. If this question were raised by oral evidence it would be better to leave it until the facts were fully developed by a trial, but as it rests upon a written agreement, that is set forth in full, it seems necessary to decide it now.

In *Lawrence* v. *Fox* (20 N. Y., 268) it was held that an action would lie on a promise made by the defendant upon a valid consideration to a third person for the benefit of the plaintiff, although the plaintiff was not privy to the consideration.

In *Burr* v. *Beers* (24 N. Y., 178) it was held that a mortgagee could maintain an action at law against a grantee of the mortgaged premises, who had assumed to pay the incumbrance.

In *Davis* v. *Morris* (36 N. Y., 569, 575) it was said that to bring the case within the principle of *Lawrenve* v. *Fox*, there must be an agreement to pay to the third person, not simply that the rent of certain premises should be paid from a certain fund.

In *Garnsey* v. *Rogers* (47 N. Y., 233) it was held that a stipulation in a mortgage, whereby the mortgagee assumed and agreed to pay a prior mortgage on the premises, does not impose on the mortgagee a personal liability for the prior mortgage debt that can be enforced against him by the prior mortgagee, upon the ground that the promise was made for the benefit of the mortgagor only.

In *Claflin* v. *Ostrom* (54 N. Y., 581) H. & O. were partners and H. sold out his interest to O., who agreed to pay the firm debts mentioned in the agreement, and among them the debt of the plaintiffs. Defendant guaranteed performance of the agreement. H. having assigned his interest under the agreement and guaranty to the plaintiffs it was held by the Commission of Appeals that they could recover either directly upon the guaranty, which they could adopt and enforce, or upon the assignments.

In *Merrill* v. *Green* (55 N. Y., 270) it was held by the Court of Appeals that on a bond given with surety by one of two partners to the other on a dissolution of the firm, conditioned to pay the

debts of the firm, a creditor of the firm could not maintain an action as on a promise made for his benefit. In this case the court said: "Green was liable with Roberts for the payment of the firm debts. He agreed with Roberts, upon a valid consideration, to assume the payment of the whole of the debts, and Nichols undertook that he should perform this contract. This was no agreement made by Green and Nichols with the creditors, or for their benefit, but one with Roberts to exonerate him from his liability for the debts of the firm."

In *Arnold* v. *Nichols* (64 N. Y., 117), where A. formed a partnership with B. and transferred his business assets to the firm, and the firm agreed to pay certain specified debts of A., and among them the plaintiff's, the Court of Appeals held that the promise was made for the benefit of the creditors holding the claims specified, and that an action could be maintained by such a creditor against the firm. That the promise was not made primarily nor directly for the benefit of A., as his property was to be taken to pay the debts and he was still to remain liable as a principal.

In *Simson* v. *Brown* (68 N. Y., 355) it was held that a promise for a valid consideration by A. to B. gives no right of action to C., unless it was made for his benefit and he was the party intended to be benefited. The court said: "It is true that in *Merrill* v. *Green* (*supra*) the name of the creditor is not mentioned in the instrument, either in the bond or in the condition. This makes no difference. The condition was to pay all the indebtedness of the firm. The plaintiff in that case owned an indebtedness of the firm. He was a creditor, so that he was as fully indicated and included in the condition as though he had been named in it."

In *Root* v. *Wright* (84 N. Y., 72) it was held that a covenant in a deed absolute on its face, but intended simply as a mortgage, whereby the grantee assumed and agreed to pay a prior mortgage, gave no right of action against the grantee to the holder of the mortgage, as he was neither a party to the contract nor the one for whose benefit it was made.

In *Seward* v. *Huntington* (94 N. Y., 104) it was held that creditors could not enforce an agreement that was not made for their benefit, but solely for that of the parties to the agreement, and which imposed no primary liability upon the latter. (*Garnsey* v.

*Rogers*, 47 N. Y., 241; *Pardee* v. *Treat*, 82 id., 385, and *Root* v. *Wright, supra,* are cited.)

While it is not easy to reconcile these cases, they seem to unite in holding that the promise must be made for the benefit of the third person to enable him to enforce it. We think that from the form of the agreement the promise of the defendant Pond was not made for the benefit of the creditors of Virgil & Green. He does not agree to pay all the firm debts, which would necessarily include that of the plaintiff, but agrees to pay " one-half the debts of said firm." (*Wheat* v. *Rice*, 97 N. Y., 296.) If this means one-half in amount, it would not necessarily include the plaintiff's claim amounting to less than $800, for even as between Virgil and Pond, the agreement of the latter could be performed without paying the plaintiff anything, as the firm debts amounted to $4,300. If it means an undivided half of each firm debt outstanding, then Pond would be liable only for an undivided half of the claim of the plaintiff, even if the promise was made for his benefit. The object of a promise in that form, however, would seem to be for the benefit of Virgil, to relieve him of his obligation to his old partner Green, rather than for the benefit of creditors. As between Virgil and Green, each was liable for only one-half of the debts, while as between either and the firm creditors, each was liable for the whole. The agreement to pay an undivided half, therefore, would not, within the authorities, be a promise primarily for the benefit of creditors, but solely for the benefit of the parties. This view is strengthened by the covenant of Virgil to make up the deficiency, if the firm accounts should not be sufficient to pay the firm debts after prompt effort to collect on the part of Pond. This seems designed for the convenience of Virgil " to secure equality of contribution " as between himself and partner " in the payment of their joint obligations," and not for the further security of the creditors holding those obligations. The agreement in effect is to collect and pay, and if there is a deficiency, to advance and pay one-half of that, with a covenant for repayment of the sum so advanced. This is not a substitution of the liability of Pond for the liability of Virgil, but an assumption by the former in aid of the latter, upon his promise to repay in the contingency named. Such an agreement " is not a promise made for the benefit

of the plaintiff, although he might be benefited by its performance." (*Pardee* v. *Treat*, 82 N. Y., 385, 388, 389.)

If this reasoning is correct it follows that no cause of action is shown to exist against the defendant Pond, and that the attachment against his property cannot be sustained. The evidence of fraud on the part of the defendant Green, is in the main, that he assigned "his interest" in the assets of Green & Pond to pay a debt he owed his wife for borrowed money. There is no suggestion that it was not an honest debt, or that he assumed to sell any more than his interest, which would be his share in the surplus after the firm debts were paid. The plaintiff cannot use the acts and declarations of Pond as evidence against Green. If Pond was guilty of fraud, that did not concern the plaintiff, as he had no claim against either Pond or the firm of Green & Pond.

We do not think the evidence of fraud against Green alone is strong enough to sustain the attachment against him.

The order should be reversed, with costs of appeal, and the attachment vacated, with costs of motion.

HARDIN, P. J. :*

Plaintiff in his affidavit says " that the amount of his claim on said causes of action is the sum of $235.92, over and above all counter-claims, discounts and offsets known to deponent." This follows a verified complaint which alleges positively the execution and delivery of one of the notes set out to plaintiff, and his ownership of it, and also alleges the other causes of action on information and belief. There is an affidavit of Virgil, one of the defendants, who is one of the original debtors as to all of the causes of action set out, in which affidavit it is alleged that the complaint is true except as to matters therein "respecting the indorsements and transfers of the promissory notes and causes of action therein named to said plaintiff, and as to those statements he is informed of them by the plaintiff herein, and believes them to be true, and said complaint is hereby made part of this affidavit." These affidavits may both be read in connection. ( *White* v. *Reichert*, 14 W. Dig., 285.)

The information, coupled with a statement of the source from which it was derived, may be used. The affidavits read together

---

* This opinion was delivered in the second of the above entitled actions.

make out a case substantially within the provisions of section 636, Code of Civil Procedure. (*Bennett* v. *Edwards*, 27 Hun, 352; *Alford* v. *Cobb*, 28 Hun, 22.)

The affidavits as drawn make a compliance as to each cause of action. The whole amount of the causes of action is $235.92, and against that there are no counter-claims. In *Murray* v. *Hankin* (30 Hun, 38) the affidavit was by an agent and defective because it did not show there were no counter-claims known to plaintiff. For that defect it was held bad, and BRADY, J., incidentally remarked that "the affidavits should perhaps show that as to each of the items there was no counter-claim," etc. We think such is shown to be the case, in the affidavits before us.

The complaint and the two affidavits referred to make out a compliance with the requirements of section 636, Code of Civil Procedure.

The causes of action set out all arose on contract, and therefore the case in that regard was one where it was proper to apply for an attachment. (Code, § 636; *Ruppert* v. *Haug*, 87 N. Y., 141; *Jacobs* v. *Hogan*, 85 N. Y., 243.)

The statute allows an attachment to issue when the defendant "has removed or is about to remove property from the State with intent to defraud his or its creditors; or has assigned, disposed of or secreted, or is about to assign, dispose of, or secrete property with the like intent."

However, as a cause of action as against Pond is not set out in the complaint, the attachment as to him ought not to stand. (See opinion of VANN, J., in *Edick* v. *Green et al.* (*supra*). We are, therefore, left to inquire whether facts are properly shown to justify an attachment against Green. We think the affidavits do not establish a fraud, or a fraudulent intent upon the part of Green, and that a proper case was not presented for an attachment as to Green. (See opinion of VANN, J., *supra*.) We must, therefore, reverse the whole order.

Order reversed, with ten dollars costs and disbursements, and motion to vacate the attachment granted, with ten dollars costs.

FOLLETT, J. (dissenting):

Each of the complaints sets forth perfect causes of action against Green & Virgil as copartners. Virgil swears that both complaints are true, and Green has not denied either.

I agree with my brethren, that there is no validity in the technical questions raised by the appellants. That Green has no property except his interest in the partnership, is positively testified to by Virgil and by Tillapaugh. That Pond has no property except his interest in the partnership, is sworn to by Virgil and substantially by Shumway, and Virgil swears that he is insolvent. The liabilities of the firm amount to about $4,300, and Green admitted that the firm was insolvent. Green stated October 10, 1884, that he was about to assign his interest in the assets of Green & Pond to his wife, to secure her for an individual debt against himself. Tillapaugh testified that Green said he had made such transfer to his wife, and that his wife owned nothing except her interest in the partnership assets and a house which was mortgaged for the full purchase-price, and that she would not pay any of the partnership debts, and that she was about to sell the goods to a man whose name he would not disclose. Pond, by his own confession, was engaged in putting the property of the firm beyond the reach of the firm creditors. The evidence that Green and Pond were each engaged on his own account, in disposing of the firms assets (which are insufficient to pay the firms debts) for the purpose of paying actual or pretended individual debts, is abundant. Neither of these defendants presents any evidence contradicting the evidence of the plaintiff, or substantiating the validity of the claims of persons to whom they are assigning partnership property. The complaints stand admitted. Not an allegation of the moving papers is denied, nor are the inferences, which naturally flow from those allegations, explained. On the merits *prima facia* cases for attachment were made out against Green & Pond, on the ground that they had assigned, disposed of, or were about to assign or dispose of their property, with intent to defraud their creditors. It will be observed that these transfers were not made by the firm of Green & Pond, but by the individual members thereof. A transfer by one partner of partnership property to pay an individual debt is fraudulent and void as against the firm creditors, unless the firm is solvent at the time. (*Menagh* v. *Whitwell*, 52 N. Y., 146 ; Wait on Fraud. Con., § 216.)

It is urged that the attachments cannot be sustained as against Pond, because it is said the papers show that a recovery cannot be

had against him in the actions. Undoubtedly the agreement of October 4, 1884, above quoted from is, standing alone, insufficient to establish a right of recovery against Pond. (*Wheat* v. *Rice*, 97 N. Y., 296.) The causes of action alleged in each complaint against Pond are undenied, and on the trial, evidence in addition to the agreement above quoted from may be given, which will establish the allegations. The undisputed evidence shows: (1.) A dissolution of the firms of Virgil & Green and Green & Pond. (2.) The insolvency of both firms. In either of these cases the assets are a trust fund for the payment of the firm creditors. (Pom. Eq. Juris., § 1046; *Menagh* v. *Whitwell*, 52 N. Y., 146.) In such cases either copartner or the firm creditors may enforce the application of the firm assests to the payment of the copartnership debts. (Story on Part., §§ 326, 360.) In addition to the right arising out of the circumstances, Pond took the interest of Virgil "subject to the debts of said Virgil & Green," and he has no cause to complain that the goods have been seized to satisfy the debts of Virgil & Green. It is not shown that the assets of Green & Pond are different from the assets of Virgil & Green, and it is fair to assume that they are the same, as it appears that the attachments were issued shortly after Pond succeeded to Virgil's interest, and there is no evidence that the new firm had incurred liabilities. Had all of the property of Green & Pond been attached in an action against Virgil & Green, Pond would have had no cause for complaint, and he could not have obtained a discharge of it except pursuant to section 693, Code Civil Procedure. The undisputed evidence is, that Pond has no property except his interest in the firm of Green & Pond. The appeal books do not show that the individual property of Pond has been attached or threatened, nor do they show that any property has been attached. An attachment will not be vacated unless the moving party shows that he has been or may be injuriously affected thereby. (*Furman* v. *Walter*, 13 How., 348; *Matter of Griswold*, 13 Barb., 412.) But under the attachments, the individual property of Pond, if he has or acquires any, may be seized and the moving papers not establishing an individual cause of action against him, the attachments, in so far as they authorize the seizure of the individual property, are too broad and should be modified by striking out that clause. The plaintiffs having estab-

lished a right to attach the firm property by virtue of the causes of action against Virgil & Green, the orders denying the motions to vacate the attachments should be so modified as to vacate that part of them authorizing the seizure of Pond's individual property, and in all other respects affirmed. The ground upon which the modifications are based, not having been presented to the court below or upon this apppeal, and the plaintiffs having substantially succeeded, the affirmance should be with ten dollars costs and disbursements in each case.

The same judgment was rendered in each case, viz.: Order reversed, with ten dollars costs and disbursements. Motion to vacate attachment granted, with ten dollars costs.