(N. 1732, December 7, 1914)

FRANK HASBROUCK, Superintendent of Insurance of
the State of New York, as successor in office of WIL-
LIAM T. EMMETT, as such Superintendent of Insur-
ance, for the use and benefit of JAMES B. CLOW, et al.,
Appellee, vs. CLARK M. CARR, Appellant.

## SYLLABUS BY THE COURT.

1.   A surety company having executed a bond for the bene-
fit of sub-contractors, laborers and material men, received a
contract of indemnity from the principal contractor and one
Carr, providing that they would at all times indemnify and
save the surety harmless from and against every claim, de-
mand, judgment, etc., and that they would place the surety
in funds to meet every claim, demand, judgment, etc., against
it by reason of such suretyship and before it should be re-
quired to pay thereunder.  Held, that the contract was one
of   indemnity solely, and, in a suit against Carr, for the
benefit of the creditors of Anson, no recovery could be had,
where it appeared from the complaint and answer that the
surety company was insolvent; that it had no assets; that
it had paid no part of such judgments and could not be re-
quired to pay, by reason of its insolvency.

P. 594

2.   Where the security is given by a stranger and is mere-
ly personal to the surety, and cannot be construed as a
pledge for the security of the debt, if the surety is discharg-
ed from liability the creditor can not afterwards take any-

JANUARY TERM, A. D. 1914 587

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

thing by subrogation to his rights. If, on the other hand, the security is a pledge for the payment of the debt as well as a personal indemnity for the surety, the discharge of the surety will not deprive the creditor of a claim on the security for the payment of the debt.

P. 595

3. Where a stranger undertakes to indemnify a surety and the surety thereafter becomes bankrupt so that it cannot pay any of its suretyship obligations and is dissolved and its corporate capacity and right to do business terminated, the legal representative of such surety cannot enforce the indemnity, because such surety lost nothing and was not damaged, and cannot be damnified.

P. 596

4. An indemnitor is a person who indemnifies, and to indemnify is to "save harmless, to secure against loss, damage or penalty; to make good to; to reimburse; to compensate."

P. 596

Appeal from District Court, Bernalillo County; Herbert F. Raynolds, Presiding Judge. Reversed and Remanded.

ALONZO B. McMILLEN, attorney for appellant.

Sureties are said to be favorites of the law, and contract of suretyship must be strictly construed so as to impose upon the surety only those burdens clearly within its terms, and must not be extended by implication or presumption. Stearns on Suretyship. Secs. 2, 17; 21 Wall 657; 2 Wall 235; 24 How. 315, 317; 6 How. 292; 21 How. 66, 75; 12 How. 168, 179; 92 U. S. 93, 98; 103 U. S. 71; 15 Wall 140, 144; 164 U. S. 227, 237; 120 U. S. 206, 213; 1 Fla. 327; 6 Ill. 581; 20 Ill. App. 83; 15 Ind. App. 575; 1 La. 62; 10 Mo. 559; 5 Mo. App. 78; 10 Jones 180; 20 Ohio 93; 22 Ill. App. 34; 7 Harr. & J. 160; 55 Mo. App. 107; 2 Am. Dec. 291; 32 Tex. 200; 9 Utah 260; 166 Ind. 498; 138 Cal. 724; 4 Appeal Cases 505; 231 Ill. 528; 109 Ill. App. 486; 99 Ill. App. 132; 9 La. 423; 3 La. 695; 101

Md. 598; 116 Mo. 179; 89 Mo. App. 450; 55 Neb. 418; 77 N. W. 756; 50 Neb. 789; 21 N. Y. App. Div. 413; 10 Jones 180; 2 Penn. & W. 27; 15 Serg. & R. 100; 32 Tex. 200; 98 Va. 35; 21 Wall 657; 2 Am. Dec. 291; 2 Wall 235; 145 Fed. 148.

If liability of surety was for sole benefit of Empire State Surety Company and that company was hopelessly insolvent, its legal representative could not maintain an action for use and benefit of portion of defunct company's creditors. 2 Morowitz on Corp., Sec. 787.

Where stranger undertakes to indemnify a surety and surety thereafter becomes bankrupt and is dissolved, legal representative of such surety cannot enforce indemnity, because such surety lost nothing and is not damaged. 108 U. S. 260; 94 N. Y. 104; 20 So. 872; 9 S. W. 241; 39 Ohio St. Rep. 625; 83 Ky. 314; Stearns on Suretyship, Sec. 272, 32.


NEILL B. FIELD, for appellees.


Bonds upon which surety company became surety on written application, although executed to United States, were for benefit of the use of plaintiffs. 92 Fed. 549; 200 U. S. 197; 219 U. S. 24; 215 U. S. 533; 192 Fed. 364; 213 Fed. 429.

Parties were jointly and severally bound by application for bonds. 10 Peters 257; 14 Peters 208; 44 N. H. 174; Baylies' Sureties and Grantors, p. 31; 150 Fed. 17; 145 Fed. 144; 2 Parsons, Contracts, 6th Ed., 502; 121 Fed. 609; 141 Fed. 563; 117 Wis. 639.

In either aspect of contract use plaintiffs are entitled to benefit of it. 92 Fed. 851; 137 U. S. 300; 133 U. S. 423; 131 Mass. 93; 115; 136 Mass. 34; 103 N. Y. 527; 116 Mo. 51; 69 S. W. 702; 19 L. R. A. 367; Sheldon on Subrogation 184; 9 Paige's Ch. 432; 26 Am. Dec. 485; 73 Am. St. Rep. 602; 83 Am. St. Rep. 745; 31 Mass. 326; 132 Mass. 385; 133 U. S. 610; 144 Minn. 319; 126 Pa. 556.

Suit properly brought by Superintendent Insurance State New York. 103 U. S., 222, 225.

JANUARY TERM, A. D. 1914     589'

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

Suit properly brought for use of creditors who had obtained judgment against surety company. Bliss, Code Pl., Sec. 45; Phil. Code Pl., Sec. 449; 49 Minn. 395; 62 U. S. 170; 37 Ill. 465; 107 Mass. 568; 129 Mass. 332; 33 Minn. 521; 10 B. Mon. 347; 1 Sutherland Code Pl. Sec. 11; 106 Cal. 651; C. L. 1897, Sec. 2685; Bliss Code Pl. Sec. 61; 1 Sutherland Code Pl. Sec. 26; 3 Sutherland Code Pl. Secs. 3293-4-5; 11 N. M. 419; 7 Cush. 595, 598; 15 Enc. Pl. & Pr. 490; Ibid. 491-2-3; 15 S. E. 676; 14 Mich. 489; 64 Kan. 191; 64 L. R. A. 581.

## Appellant's Reply Brief.

126 Pa. 556; 83 Am. St. Rep. 745; 30 Cyc. 36 to 41, 41 to 50.

## STATEMENT OF FACTS.

Andrew W. Anson was a contractor residing in the city of Albuquerque and entered into a contract with the United States Government for the erection of the Albuquerque postoffice; and in order to qualify as such contractor, made application to the Empire State Surety Company to furnish bond to secure the faithful performance of his contract. The first application was made on March 16, 1908, and the second one on December 19, 1908. The applications are in substantially the same form and it will be necessary to consider but one of them.

In pursuance of such applications, the Empire State Surety Company executed bonds with Andrew W. Anson as principal, to the United States of America. The applications referred to described Andrew W. Anson as applicant, Sarah Anson as wife, and Clark M. Carr, as indemnitor. Clark M. Carr, the appellant, was not the contractor and was not interested directly or indirectly in Anson's contract, and was not a party to the bonds given by Anson and the Empire State Surety Company to the United States Government.

The parties for whose benefit this suit was brought became creditors of Anson on account of labor and materials furnished in the erection of the postoffice building. Anson

590          SUPREME COURT OF NEW MEXICO

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

became unable to pay these creditors, and thereafter, in a suit instituted in the United States court against Andrew W. Anson and the Empire State Surety Company, judgment was recovered against them for the respective amounts claimed by the several creditors.

The appellant, Clark M. Carr, was not a party to that suit, and was not a debtor to the creditors of Anson or in any way responsible to them, unless the application to the Empire State Surety Company which he signed as indemnitor made him responsible.

The judgments recovered against Andrew W. Anson and the Empire State Surety Company have never been paid.

The Empire State Surety Company never paid any of the judgments against it by Anson's creditors and is wholly insolvent and unable to pay its debts or any part thereof, and has been dissolved and its corporate capacity and right to do business as a corporation terminated, and the superintendent of insurance of the state of New York was directed to take possession of its assets and liquidate its business.

William T. Emmet, at the time of the commencement of this action was superintendent of insurance of the State of New York, and Frank Hasbrouck is his successor and was duly substituted as such in this cause.

It is alleged among other things in the complaint that the payment by the Empire State Surety Company of the several judgments rendered against it and the said Anson became impossible by reason of the insolvency of the said Empire State Surety Company.

Appellant filed a demurrer to the complaint, which was overruled by the court, whereupon he filed an answer, setting up the fact that the Empire State Surety Company was insolvent, and unable to pay its debts or any part thereof, and that it had been dissolved and its corporate capacity and right to do business as a corporation terminated; that it had not and cannot pay said judgments or any part thereof, and that it had not and could not suffer any loss, etc., by reason of said judgments. And likewise it was alleged that the insurance commissioner had not paid such judgments, and that such officer had no funds with

JANUARY TERM, A. D. 1914          591

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

which he could pay such judgments, consequently the indemnitee was not and could not be damnified.     Other allegations were contained in the answer, which, however, need not be set forth.    After answer appellee moved for judgment upon the pleadings, which motion was sustained by the court, and judgment was entered in favor of Frank Hasbrouck, superintendent, etc., for the use and benefit of the creditors named in the complaint, and for the respective amounts due each of such creditors, against appellant.    From such judgment this appeal is prosecuted.

## OPINION.

ROBERTS, C. J.—The bond or contract to enforce which this suit was filed, is a combined application for a contract bond and an indemnity agreement, usually, it is evident, only intended to be signed by the applicant for such bond.    It is designated, on the face of the paper, "Application for a contract bond."    This is followed by a blank space for the place and date of execution, and eighteen questions to be answered by the applicant for the bond. None of these questions have any relation whatever to any other signer of the bond, save the applicant.    These questions are immediately followed by the following printed paragraph:

"Should the Empire State Surety Company, hereafter called the surety, execute or procure the execution of the bond hereinbefore applied for, the undersigned, hereinafter called the indemnitor, do in consideration thereof, jointly and severally undertake and agree."

This is followed by thirteen numbered paragraphs, setting forth the agreements of the indemnitor, and so designating him, practically all of which only refer to the applicant.    The fourth paragraph, upon which appellant's liability rests, if at all, reads as follows:

"That the indemnitor will perform all the conditions of said bond on the part of the indemitor to be performed and HE will at all times indemnify and save the surety harmless from and against every claim, demand, liability, cost, charge, expense, suit, order, judgment and adjudica-

tion whatsoever, and will place the surety in funds to meet every claim, demand, liability, cost, charge, expense, suit, order, judgment or adjudication against it by reason of such suretyship and before it shall be required to pay thereunder."

The bond was signed by Anson, the contractor, his wife and Clark M. Carr, the appellant.

Appellant contends that paragraph four, of the indemnity agreement, quoted supra, has no relation whatever to him, but refers solely to Anson, the contractor. But in view of the fact that the undertaking was a joint and several one, it might reasonably be held that the undertakings and promises contained in such paragraph were joint and several, and applied to and bound all the signers of the contract. Assuming that Carr was bound by the provisions of said paragraph, we will pass to a consideration of his liability to the use of plaintiff in this case. This liability depends upon whether the agreement signed by him was intended solely for the indemnification of the Empire State Surety Company, and was personal to it, or whether it was an agreement by Carr, to pay the debts contracted by Anson, the payment of which were secured by the bond signed by the Empire State Surety Company. The rule is well stated in Brandt Suretyship Guaranty (3rd Ed.) Sec. 362, as follows:

"Where the security is merely personal to the surety, and cannot be construed as a pledge for the security of the debt, if the surety is discharged from liability the creditor cannot afterwards take anything by subrogation to his rights. The obvious reason for this rule is that the surety being discharged cannot be damnified, and the creditor claiming only through the surety, and occupying his place, can have no greater rights than he. If, on the other hand, the security is a pledge for the payment of the debt as well as a personal indemnity for the surety, the discharge of the surety will not deprive the creditor of a claim on the security of the payment of the debt."

It will be noted that Carr did not undertake to pay the claims, judgments, etc., but only to place the Empire State

Surety Company in funds to meet such claims and judgments, before it should be required to pay the same. Was this covenant intended only for the protection of the surety, or was it a direct undertaking on the part of Carr to pay the creditors? Obviously this provision was inserted to secure the Empire State Surety Company against loss by reason of its suretyship for Anson. This is more manifest when we consider the situation of the parties to the contract at the time the agreement was entered into, and examine the entire contract. Anson had been awarded the contract for constructing certain extensions and additions to the Albuquerque postoffice. His answers to the questions contained in the application showed that he was solvent. The Empire State Surety Company was also solvent and authorized to transact business in New Mexico. The insolvency of neither Anson nor the Empire State Surety Company was contemplated. The company, as is usually the case, was desirious of protecting itself against loss by reason of such suretyship. It knew that Anson might default in some of the conditions of the bond, in which event it would be called upon to respond, under the bond which it proposed to execute for him, in damages. In order to protect itself against such liability it required Carr to join in the indemnity agreement with Anson, before it would execute the bond. The only object which the company had in view was its protection against the payment of judgments which might be obtained against it by reason of its suretyship for Anson, and costs, charges and expenses which it might incur. To better insure this protection the clause was inserted requiring the indemnitors to place it in funds to meet every such claim, judgment, etc., by reason of its suretyship "and before it shall be required to pay thereunder." This clause was evidently not inserted for the benefit of the creditors and claimants under the surety bond, but solely for the indemnification of the surety. It did not require the surety company to apply this money, so paid by the indemnitors, to the liquidation of such claims and judgments. There is no promise on the part of Carr that he will, in discharge of his obligation, pay any money to the creditors of Anson, who might be

594 SUPREME COURT OF NEW MEXICO

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

able to resort to the surety bond. He simply agreed that he would place the surety company in funds, to pay any claim, judgment, etc., before it should be required to pay the same. Both the complaint and answer in this case show conclusively that the Empire State Surety Company is insolvent; that it has not paid the judgments, for which a recovery is sought in this case; that it has no assets whatever, and cannot pay any part of such judgments·; that it has been dissolved and has ceased to exercise any corporate functions. In other words, the pleadings show that it cannot be required to pay the whole or any part of any such judgments. This being true, no recovery can be had in this case.

By paragraph four Carr undertakes to place the company in funds to meet every "claim, demand, liability, cost, charge, expense, suit, order, judgment and adjudication whatsoever," and "before it shall be required to pay thereunder." Suppose, for illustration, that the Empire State Surety Company was insolvent; that "A", a creditor of Anson, should file a claim with the surety company; that Anson was insolvent; that the surety company should file suit against Carr, to compel him to place the surety company in funds to pay such claim. Would it not be a complete defense for Carr, if he should allege and prove that there was no liability on the part of the company? Most assuredly, and if this be true, has he not plead a complete defense in this case, when he shows that the company, by reason of its insolvency, cannot be required to pay any money on the judgments in question?

In the case of McArthur Bros. Co., vs. Kerr, 140 N. Y. S. 527, the court was called upon to construe the provisions of an indemnity agreement, very similar to that now under consideration. In that case the provision was:

"That said Mary Grage shall and will at all times indemnify and keep indemnified and save harmless the said company from and against all loss, damage, cost, charges, counsel fees and expense whatsoever which said company shall or may for any cause, at any time, sustain or incur by reason or in consequence of said company having executed or agreed to execute said instrument; and do fur-

JANUARY TERM, A. D. 1914 595

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

ther covenant and agree to pay to said company or its representatives all damages for which said company or its representatives shall become responsible upon the said bond or undertaking before said company, or its representatives shall be compelled to pay the same, any sum so paid, however, to be applied to the payment of such damages."

The court said:

"If this agreement is simply one of indemnity, then the nonsuit was right, as there is no proof in the record that the surety company has suffered any loss whatever, and it affirmatively appears that there now remains no further liability against it upon this judgment. If, on the other hand, the agreement goes further and is an absolute promise to pay, dependent only upon the arising of the liability against the surety company by the rendition of the judgment, such an agreement is valid and enforcible. See Maloney vs. Nelson, 144 N. Y. 182; 39 N. E. 82.

The determination of the question depends upon the meaning given to the wording of the last phrase of the above question. It is to be noted that the obligation to pay is by the express wording limited to payment preceding the time when the surety company is compelled to pay. Up to this time the surety company has not been compelled to pay anything, and so far as appears from the record has not paid a dollar. It is further to be noted that all that is paid to the surety company is to be devoted to the payment of the damages, which the Surety Company was obligated to pay. This further evidences to me that the real purpose of the clause was to compel the indemnitor, Mary Grage, to furnish to the surety company in advance the necessary funds with which to liquidate such damages as it might be compelled to pay under its bond. If I am right in this construction, then the contract was purely one of indemnity, and, until such time as loss occurred to the surety company, there were no damages arising under the Grage agreement."

Where a stranger undertakes to indemnify a surety, such undertaking does not create a trust in favor of creditors, nor can they be subrogated to the surety's rights, and, likewise, where a stranger undertakes to

596    SUPREME COURT OF NEW MEXICO

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

indemnify a surety and the surety thereafter becomes bankrupt so that it cannot pay any of its suretyship obligations and is dissolved and its corporate capacity and right to do business terminated, the legal representative of such surety cannot enforce the indemnity, because such surety lost nothing and was not damaged, and cannot be damnified by such judgment. Hampton vs. Phipps, 108 U. S. 260; Seward vs. Huntington, 94 N. Y. 104; Taylor vs. Farmer's Bank, 9 S. W. 241 (Ky.); Leggett vs. McClelland, 39 Ohio St. 625; Macklin et al., vs. Northern Bank of Ky. 83 Ky. 314; Stearns on Suretyship, Sec. 272.

That this was simply a contract of indemnity is made more evident by the designation of the parties. Throughout the contract Anson, his wife and Carr are referred to as indemnitors. Webster's International Dictionary defines "indemnitor" as "a person who indemnifies." The same authority defines the verb "indemnify" as follows: "1. To save harmless, to secure against loss, damage or penalty. 2. To make good to; to reimburse; to compensate," and the same authority defines "indemnitee" as "a person who receives or is to receive indemnity." It is therefore clear under these definitions that the indemnity was to protect the surety, that is to say, the debtor, and not the creditors, of Anson; consequently, unless there is some express language in the agreement signed by Carr as indemnitor, by which he binds himself to pay the creditors of Anson, we may reasonably suppose that the word "indemnitor" as descriptive of Carr was used in its natural sense, and that his undertaking was only for the benefit of the party with whom the contract was made.

Appellee quotes, in his brief, a statute of the United States, (33 Stat. C. 778, p. 811) which gives to creditors of a contractor, entering into a formal contract with the United States for the construction of public buildings, etc., a right to resort to the bond given the United States by the contractor, to recover for materials furnished and work done on such building, etc., and argues that this statute applies to the indemnity agreement executed by Carr to the surety company. As we view it, this statute has no relation whatever to this case. This is not a suit on

the bond referred to in the statute, and it is not pointed out in what particular, if any, it could affect Carr.

For the reasons stated, the judgment of the district court will be reversed, and the cause remanded, with instructions to dismiss the complaint, and, IT IS SO ORDERED.